ORAL ARGUMENT NOT YET SCHEDULED

No. 23-1174 (L), 23-1221

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CITY OF PORT ISABEL, *et al.*,

*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

## PETITIONERS' JOINT MOTION TO STAY OR EXPEDITE

Nathan Matthews                     Tom Gosselin
Sierra Club                         Sierra Club
2101 Webster St., Suite 1300        P.O. Box 4998
Oakland, CA 94612                   Austin, TX 78723
415-977-5695                        424-346-3276
nathan.matthews@sierraclub.org      tom.gosselin@sierraclub.org

Lisa M. Diaz
Sierra Club
910 Julia Street,
New Orleans, LA 70113
305-336-2258
lisa.diaz@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*

**Additional counsel listed on inside cover.**

Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 544-4218
ghinojosa@ghinojosalaw.net

*Attorney for City of Port Isabel*

Dated Feb. 2, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties

1.    Petitioners

### City of Port Isabel

No Rule 26.1 Corporate Disclosure Statement is required for Petitioner City of Port Isabel, a governmental entity.

### The Carrizo Comecrudo Tribe of Texas

The Carrizo Comecrudo Tribe of Texas has no parent companies, and there are no publicly held companies that have a 10 percent or greater ownership interest in the Carrizo Comecrudo Tribe of Texas.

The Carrizo Comecrudo Tribe of Texas, a corporation organized and existing under the laws of the State of Texas, is a nonprofit organization dedicated to maintaining, preserving, and protecting the tribal identity of the Carrizo Comecrudo Tribe of Texas.

### Sierra Club

Sierra Club has no parent companies, and there are no publicly held companies that have a 10 percent or greater ownership in it. Sierra Club is a nonprofit corporation organized and existing under the laws of the

i

State of California, dedicated to the protection and enjoyment of the environment.

### Vecinos para el Bienestar de la Comunidad Costera

Vecinos para el Bienestar de la Comunidad Costera ("Vecinos") has no parent companies, and there are no parent companies that have a 10 percent or greater ownership interest in Vecinos.

Vecinos, an association organized and existing under the laws of the State of Texas, is an unincorporated nonprofit association dedicated to protecting and improving the health, standard of living, and economic development of the coastal community in the Rio Grande Valley of South Texas.

2.    Respondent

### Federal Energy Regulatory Commission

3.    Respondent-Intervenors

### Rio Grande LNG, LLC

### Rio Bravo Pipeline Company, LLC

## B.   Rulings Under Review

1.   Order on Remand and Amending Section 7 Certificate, *Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC,* 183 FERC ¶ 61,046 (Apr. 21, 2023).

2.   Order Address Arguments Raised on Rehearing, *Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC*, 185 FERC ¶ 61,080 (Oct. 27, 2023).

## C.   Statement of Related Cases

Pursuant to Circuit Rule 28(a)(1)(C), the undersigned states that some of the issues raised in this case are similar to the issues raised in the following case:

1.   *City of Port Isabel, et al. v. FERC*, D.C. Circuit Case Nos. 23-1175 (L) and 23-1222 (concerning Texas LNG Brownsville LLC FERC Dkt. CP16-116). On November 15, 2023, the Court Clerk granted FERC's motion to calendar that case and this one before the same panel. (ECF No. 2027253)

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases..............................i

Table of Contents .................................................................iv

Table of Authorities...............................................................v

Glossary ........................................................................vii

Introduction and Time Exigencies...................................................1

Relief Requested..................................................................4

Standard of Review ...............................................................5

Argument.........................................................................6

    I.   This Case Presents a Substnatial Challenge to the Decision under Review, and Petitioners Are Likely to Prevail on the Merits ...........................................................6

        A.   Greenhouse Gas Emissions ...........................7

        B.   Environmental Justice.............................9

    II.  Petitioners Are Likely to Be Irreparably Injured If Construction Proceeds While This Case Is Pending ..........................12

    III. A Stay Is Unlikely to Unduly Harm Other Parties ...................16

    IV. Public Interest...................................................18

Conclusion ......................................................................21

Certificate of Compliance........................................................23

Certificate of Service ..........................................................24

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987)..........................................................................13, 16

*Communities Against Runway Expansion v. FAA*,
   355 F.3d 678 (D.C. Cir. 2004) ................................................................10

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
   772 F.2d 972 (D.C. Cir. 1985) ..................................................................6

*High Sierra Hikers Ass'n v. Blackwell*,
   390 F.3d 630 (9th Cir. 2004) ...................................................................16

*League of Women Voters of United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) .....................................................................19

*Save Our Sonoran, Inc. v. Flowers*,
   408 F.3d 1113 (9th Cir. 2005) .................................................................17

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
   6 F.4th 1321 (D.C. Cir. 2021) ..................................................6, 7, 9, 10

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) .................................................................17

## Statutes

15 U.S.C. § 717b ......................................................................................1, 6

15 U.S.C. § 717f .......................................................................................1, 6

42 U.S.C. § 4332 ......................................................................................1, 6

## Regulations

18 C.F.R. § 157.23 .......................................................................................2

18 C.F.R. § 380.7 ...................................................................... 8

40 C.F.R. § 1502.21 ............................................................... 7, 8

**FERC Orders**

*Rio Grande LNG,*
    169 FERC ¶ 61,131 (Nov. 22, 2019) ....................................... 9

# GLOSSARY

| | |
|---|---|
| EIS | Environmental Impact Statement; here, document R.1227 |
| FERC | Federal Energy Regulatory Commission |
| LNG | Liquefied Natural Gas |
| NEPA | National Environmental Policy Act |
| R.____ | Item ____ in the certified index to the record |
| Rehearing Order | *Order Addressing Arguments etc. re: Rio Grande LNG, LLC, et al.,*185 FERC ¶ 61,080 (Oct. 27, 2023), R.3080 |
| Remand Order | *Order on Remand and Amending Section 7 Certificate re Rio Grande LNG,* 183 FERC ¶ 61,046 (April 21, 2023), R.3011 |

**INTRODUCTION AND TIME EXIGENCIES**

Petitioners Vecinos para el Bienestar de la Comunidad Costera *et al.* ("Vecinos") move for a stay of the FERC orders under review in this case, pending completion of judicial review, pursuant to Fed. R. App. P. 18,[1] or in the alternative, to expedite this case, pursuant to D.C. Cir. Handbook § VIII.B; D.C. Cir. Rule 27(f). Respondent Intervenor Rio Bravo opposes the motion for a stay and takes no position on the alternative motion to expedite. Respondent FERC opposes the motion for a stay. Respondent Intervenor Rio Grande has not stated its position, if any.

In *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021), this Court held that FERC, in approving the Rio Grande LNG terminal and associated Rio Bravo pipeline, relied on analyses of environmental justice impacts and greenhouse gas emissions that violated both the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, and the Natural Gas Act, 15 U.S.C. §§ 717b, 717f.

_____

[1] For purposes of Rule 18(2)(A)(ii), Vecinos state that they applied for a stay from FERC, and that FERC denied that motion, as explained below.

1

On remand, FERC reauthorized these projects. *Rio Grande LNG*, 183 FERC ¶ 61,046 (Apr. 21, 2023) (the "Remand Order") (R.3011).[2] Petitioners here sought rehearing of that reauthorization. When FERC failed to act on that rehearing request within the required 30 days, Vecinos filed the instant petitions for review challenging the Remand Order.

At the time those petitions for review were filed and procedural motions were due in these cases, project construction was prohibited, so there was no immediate need for a stay. Specifically, construction was prohibited by current FERC regulations, which prohibit construction for 90 days while a rehearing request is pending, 18 C.F.R. § 157.23(b)(1)-(3). Moreover, before this Court, FERC committed to extending that prohibition until FERC issued a merits order on the rehearing request (even if this occurred more than 90 days later), which FERC said would occur by October 27, 2023. FERC Mot. to Delay Filing Certified Index,

---

[2] Attached. For documents included in the certified index to the administrative record has already been lodged in this case, the attachments to this motion are named using the record index numbers, *e.g.*, "R.3011, Remand Order." Documents attached to this motion that are not included in the record index are numbered Exhibit 1, 2, *etc.*

2

Doc. 2012475, at 9 (Aug. 14, 2023); FERC Reply to Response to Motion to Delay, Doc. 2013668, at 1-2 (Aug. 22, 2023). And FERC insisted that it might grant the administrative rehearing request, rendering this petition for judicial review moot. *Id.*

Now, however, construction is imminent. Last week, on January 24, 2024, FERC denied petitioners' administrative stay request. Order Denying Stay, 186 FERC ¶ 61,021 (Jan. 24, 2024) (attached as Exhibit 1). That request had been filed on November 24th (*see id.* at P1) after the de facto stay expired on October 27. *See Rio Grande LNG*, Order Addressing Arguments Raised on Rehearing, 185 FERC ¶ 61,080 (Oct. 27, 2023) (the "Rehearing Order") (R.3080). Two days after denying this stay request, on January 26, FERC granted two additional notices to proceed with construction at the terminal site.[3]

As such, there is now a danger that substantial construction on the project will proceed while this case awaits judicial review. That could

---

[3] Although not directly at issue here, these notices are available at https://elibrary.ferc.gov/eLibrary/filedownload?fileid=422B485C-E7DC-CE20-9752-8D4754300000, attached as Exhibit 2, and https://elibrary.ferc.gov/eLibrary/filedownload?fileid=0F78529E-58A5-CA6E-955A-8D4756500000, attached as Exhibit 3.

take another year or more. In a similar case bringing NEPA challenges to FERC approval of a gas infrastructure project, *Alabama Municipal Distributors Group v. FERC*, D.C. Case No. 22-1101 (L), petitioners' opening brief was filed December 22, 2022; the case was argued September 5, 2023; and as of February 2, 2024, the case has not yet been decided. Here, Vecinos filed their opening brief on December 4, 2023.

In this case, it is too late to avoid *all* harm to the terminal site; some ground disturbing activity has already occurred. Nonetheless, Vecinos are filing the instant motion to avoid compounding that initial injury with the substantial additional harm that would result from an additional year of construction.

## RELIEF REQUESTED

Vecinos ask this Court to stay the Remand Order and all related FERC authorizations for the Rio Grande LNG terminal and Rio Bravo pipeline. This relief is limited to the pending resolution of this appeal of the Remand Order, which is the source of the projects' authorization.

In the alternative, Vecinos ask that this Court expedite this case. Although briefing is already underway, Vecinos propose modifying the schedule for filing the Joint Appendix and Final Briefs as follows, with

4

the hope that this will enable the Court to hear argument in this case

this term:

|  | Current Deadline | Proposed Deadline |
|---|---|---|
| Joint Appendix: | March 11 | March 8 |
| Final Briefs | March 25 | March 18 |

Petitioners further ask that this court treat this case as expedited for

purposes of setting oral argument.[4]

## STANDARD OF REVIEW

The standards of review for a motion for a stay and a motion to

expedite substantially overlap.

For a stay, this Court considers:

> (1) the likelihood that the party seeking the stay
> will prevail on the merits of the appeal; (2) the

---

[4] On November 15, 2023, the Court Clerk granted FERC's motion to calendar this case and 23-1175 (L), which concerns the same petitioners and a parallel FERC order approving the neighboring Texas LNG export facility, before the same panel. (ECF No. 2027253). If this case is expedited, Vecinos plan to file a motion in case 23-1175 asking either that it be similarly expedited (including accelerating joint appendix and final brief dates to March 15 and March 25), or that these cases be argued separately. Vecinos have not moved for a stay in 23-1175; Vecinos' understanding is that Texas LNG still lacks permits that would be necessary for it to start construction.

5

likelihood that the moving party will be irreparably
harmed absent a stay; (3) the prospect that others
will be harmed if the court grants the stay; and (4)
the public interest in granting the stay.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir.

1985) (citation omitted); *see also* Cir. Rule 18(a)(1).

For a request to expedite, this Court considers whether (1) the

decision under review is subject to substantial challenge; (2) delay will

cause irreparable injury, and; (3) the public has an unusual interest in

prompt disposition. D.C. Cir. Handbook § VIII.B; D.C. Cir. Rule 27(f).

## ARGUMENT

## I.  THIS CASE PRESENTS A SUBSTNATIAL CHALLENGE TO THE DECISION UNDER REVIEW, AND PETITIONERS ARE LIKELY TO PREVAIL ON THE MERITS

In *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6

F.4th 1321 (D.C. Cir. 2021), this Court held that in approving the Rio

Grande LNG terminal and associated Rio Bravo pipeline, FERC's

analyses of environmental justice impacts and greenhouse gas emissions

violated both the National Environmental Policy Act ("NEPA"), 42 U.S.C.

§ 4332, and the Natural Gas Act, 15 U.S.C. §§ 717b, 717f. After remand,

6

FERC reauthorized these projects. But FERC has disregarded the Court's clear instructions, and failed to correct the specific errors identified in *Vecinos*.[5]

## A.   Greenhouse Gas Emissions

*Vecinos* held that FERC's conclusion that it could not evaluate the significance of the projects' greenhouse gas emissions was arbitrary, when FERC had not addressed whether 40 C.F.R. § 1502.21(c) required FERC to use methods "generally accepted in the scientific community," potentially including the "social cost of carbon" protocol, to evaluate these impacts. *Id. Vecinos* remanded with instructions to "explain whether 40 C.F.R. § 1502.21(c) calls for [FERC] to apply the social cost of carbon protocol or some other analytical framework, as 'generally accepted in the scientific community' within the meaning of the regulation, and if not, why not." *Id.* at 1330.

FERC simply failed to do so on remand. FERC argued that social cost of carbon was not "appropriate for project level review," Rehearing

_____

[5] Although this motion rests on these two claims, Vecinos' opening brief, filed on December 4, 2024, raises additional claims beyond those here.

Order P56; *accord* Remand Order P92. But FERC did not address whether the scientific community generally accepted use of social cost of carbon for this purpose. Nor did FERC offer any argument as to how, if the scientific community *does* accept social cost of carbon for project level review (it does), 40 C.F.R. § 1502.21(c) would permit FERC to refuse to use this method in FERC's own evaluation here.

We acknowledge that despite FERC's criticisms of social cost of carbon, FERC did provide an estimate of the social cost of the project's greenhouse gas emissions. But FERC itself explicitly and arbitrarily refused to consider this estimate: FERC claimed that it was merely providing this estimate "[f]or informational purposes." Remand Order P94. Then, having rejected social cost of carbon, FERC asserted that there was no method FERC could use to determine whether the projects' greenhouse gas emissions were significant. FERC therefore refused to make such a determination, despite the fact that FERC's own regulations require FERC to identify all significant impacts, 18 C.F.R. § 380.7, and that FERC made such a determination for all other environmental impacts. FERC's refusal to consider its own estimate, or to form a judgment about the significance of greenhouse gases, undermined

8

FERC's analysis: FERC failed to explain whether and how greenhouse gases factored into FERC's determination that the project was consistent with the public interest. *See Vecinos*, 6 F.4th at 1331.

FERC's separate argument that there is no universally-accepted threshold for when monetized impacts become significant fares no better. FERC states that the social cost of carbon tool estimates that the projects' greenhouse gas emission will cause $6.6 *billion* in harm. Remand Order PP98-99. FERC's claim that it cannot determine whether this amount is trivial or not without guidance from other agencies is absurd. FERC routinely makes its own judgments about whether impacts to habitat, scenery, or other impacts are "significant" without the benefit of a universal threshold. *See Rio Grande LNG*, 169 FERC ¶ 61,131, Dissent of Comm'r Glick P14 (Nov. 22, 2019) (collecting examples) FERC offered no explanation as to why it cannot exercise similar judgment regarding climate.

## B.  Environmental Justice

Environmental justice concerns whether the project will disproportionately adversely impact minority and low-income communities. *Vecinos*, 6 F.4th at 1330. Answering this question involves

9

"compar[ing] the demographics of the population predicted to be affected

… to the demographics of" some broader comparison population.

*Communities Against Runway Expansion v. FAA*, 355 F.3d 678, 689 (D.C.

Cir. 2004).

  *Vecinos* held that FERC erred at the beginning of this process,

because FERC had failed to reconcile (1) FERC's decision to limit its

environmental justice analysis to communities within two miles of the

terminal, with (2) FERC's conclusion that many of the projects' impacts,

including air pollution, would impact communities many more miles

away. *Vecinos*, 6 F.4th at 1330-31. *Vecinos* remanded with instructions to

address this discrepancy and revisit FERC's "conclusion that the projects

'would not have disproportionate adverse effects on minority and low-

income residents in the area.'" *Id.* at 1331.

  But on remand, FERC again failed to match the geographic scope of

its analysis of community demographics to the geographic scope of

FERC's analysis and conclusions about air pollution impacts. This time,

FERC was over- rather than under-inclusive. Specifically, FERC claims

that air pollution will have impacts out to 12.8 kilometers from the

terminal site, Remand Order P118, but FERC's demographic analysis

includes all communities within 50 kilometers, *id.*, despite FERC's apparent claim that communities between 12.8 and 50 kilometers away will not be affected by the terminal's air pollution.[6]

As in *Vecinos*, this disparity is both unexplained and a barrier to effective analysis of environmental justice impacts. FERC offers no explanation for its failure to identify the demographics of the communities FERC expects to actually be affected by the terminal's air pollution. And FERC cannot rationally evaluate whether the project will disproportionately affect environmental justice communities without looking at the demographics of the communities actually affected. FERC's analysis does not make sense, and may have consequences for the conclusion reached. For example, if environmental justice communities make up a large share of the population within 12.8 kilometers, but a smaller share of the population living between 12.8 and 50 kilometers away, FERC's analysis will have understated the share of

---

[6] In proceedings before FERC, Vecinos disagreed with the method FERC apparently used to determine this 12.8-kilometer radius (which relies on "significant impact levels" developed under the Clean Air Act). But having chosen to define a radius of impact in this way, FERC must apply that choice consistently.

impacts falling on environmental justice communities, and skewed analysis of whether this share is disproportionate. And as with a failure to adequately analyze greenhouse gas emissions, a flawed analysis of environmental justice impacts undermines FERC's conclusion that the projects are in the public interest.

## II.  PETITIONERS ARE LIKELY TO BE IRREPARABLY INJURED IF CONSTRUCTION PROCEEDS WHILE THIS CASE IS PENDING

The Rio Grande terminal would be located on a narrow strip of land in between the Bahia Grande unit of the Laguna Atascosa National Wildlife Refuge and the Brownsville Shipping Channel. According to the Fish and Wildlife Service, "The US government, non-profit partners, and local governments have spent a great deal of time and resources on restoring the Bahia Grande wetlands." EIS at Appx. R-6 (R.1277).

Construction will impose continuing and irreparable harm on petitioners' members. Construction will emit air pollution that petitioners' members will be exposed to. Although construction emissions will be temporary, they will also be irreparable, in that they cannot "adequately remedied by money damages." *Amoco Prod. Co. v. Vill. of*

*Gambell*, 480 U.S. 531, 545 (1987). And even temporary air pollution can have health impacts that are irreparable, in that they can be "of long duration." *Id.*

Construction, and its associated increase in vehicle traffic on nearby roads, will also harm the endangered ocelots; vehicle strikes are one of the major threats to this species. FERC's EIS found that traffic, noise, and habitat impacts were "likely to adversely affect" endangered ocelots, EIS at 4-160, and that this impact would be "significant" for NEPA purposes, *id.* at ES-8.

Prolonged construction at the terminal site will also make it more difficult to restore that site, in the event that Vecinos ultimately prevail and that FERC chooses to deny the project on further remand. According to the EIS, construction of the terminal will impact 750.4 acres at this site. EIS at ES-2. If completed, the terminal would permanently destroy 182.4 acres of wetlands, *id.* at ES-6. It is unclear how many of these wetlands have already been impacted by the ground disturbing activities so far. But any further impact would be difficult, if not impossible, to repair. FERC concluded that the terminal's wetland impacts would be insignificant because they would be mitigated by restoration and

13

preservation of other wetlands elsewhere. *Id.* at ES-6 to -7. While that mitigation might avoid irreparable injury to the broader Gulf Coast ecosystem, it does not change the fact that *these* wetlands, which petitioners enjoy and which local tourism depends upon, will be irreparably injured if a terminal is constructed on top of them. A stay of construction would avoid further injury to these wetlands, and preserve whatever possibility currently remains for restoring them.

Continuing construction will also impact recreation and tourism, which is essential to the economy of petitioner City of Port Isabel. FERC concluded that the project will have a permanent impact on tourism in the region. EIS at 5-21.

Construction of the pipeline, which has not yet commenced, would also cause irreparable injury to petitioners' members. For example, the combined footprint of the terminal and pipeline includes 3,220 acres of wildlife habitat, EIS at ES-7. Disturbance of this habitat is one factor adversely affecting ocelots. *Id.* at ES-8.

All of these harms will impact movants and their members. For example, Carrizo Comecrudo Tribal Chair and Sierra Club member Juan Mancias regularly recreates in the Bahia Grande unit of the Laguna

14

Atascosa wildlife refuge, where he fishes, birdwatches, and otherwise enjoys nature. Mancias Decl. ¶¶ 9-10, Exhibit 4. When engaged in these activities, or otherwise traveling in the area, Mr. Mancias would be exposed to air pollution from project construction and operation. *Id.* ¶8. Mr. Mancias already uses supplemental oxygen, and he is concerned that he would be particularly susceptible to harm from this pollution. *Id.*

Sierra Club and Vecinos members (respectively) Rebekah Hinojosa and Dina Nuñez similarly recreate near the terminal site, and will suffer exposure to air pollution and diminution of their enjoyment. Hinojosa Decl. ¶¶7-8, Exhibit 5; Nuñez Decl. ¶¶7-10, Exhibit 6. Finally, construction of the project while litigation is pending will injure petitioner City of Port Isabel's economic, aesthetic, public safety, and natural resource interests. Hockema Decl. ¶7, Exhibit 7. The project would be located in a crucial recreational area for the City of Port Isabel. *Id.* ¶10. Construction and operation of the project would, therefore, have adverse impacts on the use of this area by city residents and economic impacts to the City of Port Isabel. *Id.* ¶11. The City of Port Isabel is experiencing the beginnings of these impacts from the site preparation

15

activities already underway. *Id.* ¶12. Further injury is inevitable should the project progress to more intensive construction activities.

Courts have routinely found that these types of impacts constitute irreparable injury that justifies a stay or injunction pending resolution of litigation. The Supreme Court has explained that injury to the environment is often irreparable because, "by its nature, [it] can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable.'" *Gambell*, 480 U.S. at 545. The Ninth Circuit has explained "[i]n the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of major federal action." *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 642 (9th Cir. 2004).

## III.  A STAY IS UNLIKELY TO UNDULY HARM OTHER PARTIES

As a general rule, the Supreme Court has found that where injury to the environment is at stake, "the balance of harms will usually favor the issuance of an injunction to protect the environment." *Gambell*, 480 U.S. at 545.  For that reason, the Ninth Circuit has explained that issuing an injunction when balancing a defendant's potential financial

harm against potentially irreparable environmental harm is a "classic, and quite proper, examination of the relative hardships in an environmental case." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1125 (9th Cir. 2005). The developers here may prefer to proceed as soon as they are able to do so. But they face solely economic harms, and "monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

While this general rule itself suffices to support issuance of a stay here, additional facts here indicate that delay will not unreasonably burden developers. Developers themselves are responsible for much of the delay since *Vecinos*. After *Vecinos* was decided, the developers chose to redesign the project, including incorporating carbon capture and sequestration into the terminal. Remand Order P5 n.14. Meanwhile, after FERC's initial approval, the developers also proposed to significantly redesign the pipeline. PP13-14 (summarizing these changes). However, FERC's review of the proposed terminal design changes was delayed by Rio Grande's own failure to provide FERC with information necessary to fully evaluate this change, leading FERC to

17

ultimately suspend environmental review of the carbon capture proposal, after which FERC issued the Remand Order.[7] In light of the developers' own prior failure to take steps to move the project forward expeditiously, the developers cannot claim that a stay would cause them unbearable hardship.

## IV.  PUBLIC INTEREST

Finally, the public interest favors a stay or expedition. There "is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of*

---

[7] FERC, Notice Suspending Environmental Review Schedule of the Proposed Carbon Capture and Sequestration System Amendment re Rio Grande LNG, LLC under CP22-17, Accession No. 20230414-3050 (Apr. 14, 2023), attached as Exhibit 8.

FERC has been clear that its review of the carbon capture proposal is merely suspended, and not abandoned outright. Letter to DoD Siting Clearinghouse discussing the Rio Grande LNG Carbon Capture and Sequestration System Amendment Project under CP22-17, Accession No. 20230518-3061 (May 18, 2023), attached as Exhibit 9. And Rio Grande continues to publicly state that it intends to implement carbon capture and sequestration. https://www.next-decade.com/rio-grande-lng/, last visited Feb. 2, 2024, attached as Exhibit 10.

18

*Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quotation omitted).

Here, as FERC's orders and the EIS noted, construction and operation of the project would adversely impact the surrounding communities, which are heavily dependent on tourism and outdoor recreation. Those impacts weigh in favor of issuance of a stay and/or expediting this case.

On the other hand, the public does not need immediate construction of the project. The sole purpose of the project is to enable additional U.S. exports of LNG. Rio Grande expects to need four years of construction before its first exports can occur. EIS at 2-31. As President Biden recently confirmed, there is no urgent need for additional export capacity. Already-operational export facilities have been more than adequate to exceed the U.S.'s annual delivery targets to European allies.[8] U.S. export

---

[8] White House, Fact Sheet: Biden-Harris Administration Announces Temporary Pause on Pending Approvals of Liquefied Natural Gas Exports (Jan. 26, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/01/26/fact-sheet-biden-harris-administration-announces-temporary-pause-on-pending-approvals-of-liquefied-natural-gas-exports/ (Exhibit 11).

capacity will likely double within two years, as projects that are already under construction (not including Rio Grande LNG) come online.[9] Thus, this administration and the Department of Energy have decided to pause further approval of exports while the Department revisits out-of-date studies on exports' economic and climate impact.[10] While that pause does not apply to this facility, or the others expected to come online before 2026, this pause demonstrates that even if this Court ultimately upholds FERC's decision here, staying construction until that decision is reached will not seriously harm the public interest.

If Vecinos prevail in this litigation, it will entail the conclusion that FERC has not demonstrated that the project is in the public interest; as such, avoiding construction will benefit the public. On the other hand, even if a stay is issued and then this Court ultimately rejects Vecinos' challenge, a stay would merely have incrementally delayed benefits that

---

[9] Energy Information Administration, "LNG export capacity from North America is likely to more than double through 2027," (Nov. 13, 2023), https://www.eia.gov/todayinenergy/detail.php?id=60944 (Exhibit 12).

[10] *See* Ex. 11, *supra* note 6.

20

would not have been realized for years in any event, given the long construction timetable.

## CONCLUSION

For the reasons stated above, Vecinos respectfully request that the Court grant this motion to stay, or in the alternative, that the Court expedite this case.


Dated: February 2, 2024


Respectfully submitted,


*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org

21

*Attorneys for Carrizo Comecrudo*
*Tribe of Texas, Sierra Club, and*
*Vecinos para el Bienestar de la*
*Comunidad Costera*


*/s/ Gilberto Hinojosa*
Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 554-4218
ghinojosa@ghinojosalaw.net
Attorney for City of Port Isabel

22

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure Rule 27(d) and 32(a), I certify that the foregoing motion complies with:

1. the type-volume limitations established by Rule 27(d)(2)(A), because this motion contains 3,823 words; and

2. the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point) using Microsoft Word (the same program used to calculate the word count).

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org
*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February, 2024, I have served the foregoing Joint Opening Brief for Petitioners, including the Addendum thereto, on all registered counsel through the Court's electronic filing system (ECF).

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*