**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**

# In the United States Court of Appeals for the District of Columbia Circuit

## Nos. 23-1174 and 23-1221 (consolidated)

―――――――

CITY OF PORT ISABEL, *ET AL.*,
*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

―――――――

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

―――――――

## OPPOSITION OF RESPONDENT FEDERAL ENERGY REGULATORY COMMISSION TO MOTION FOR STAY

―――――――

Matthew R. Christiansen
  General Counsel

Robert H. Solomon
  Solicitor

Robert M. Kennedy
  Senior Attorney

Jason T. Perkins
  Attorney
  jason.perkins@ferc.gov

For Respondent
Federal Energy Regulatory
  Commission
Washington, D.C. 20426

FEBRUARY 12, 2024

# **TABLE OF CONTENTS**

Introduction ............................................................................. 1

Background ............................................................................. 6

Argument ............................................................................. 8

I.    Sierra Club Cannot Show Likelihood of Success on the Merits
      ................................................................................. 10

      A.    The Commission Reasonably and Thoroughly Addressed
            Sierra Club's Arguments on Greenhouse Gas Emissions
            ......................................................................... 11

            1. Project-Level Review ..................................... 11

            2. Significance Threshold ................................. 13

      B.    The Commission Reasonably and Thoroughly Addressed
            Sierra Club's Arguments on Environmental Justice
            ......................................................................... 15

II.   Sierra Club Has Not Established Irreparable Injury ............. 18

      A.    Recreational Users, Wetlands, and Tourism ................... 19

      B.    Ocelot Impacts ...................................................... 22

III.  A Stay Will Substantially Injure Other Parties ...................... 23

IV.   The Public Interest Does Not Favor a Stay ........................... 26

Conclusion ........................................................................ 27

# TABLE OF AUTHORITIES

## COURT CASES:

*3883 Conn. LLC v. Dist. of Columbia,*
        336 F.3d 1068 (D.C. Cir. 2003)......................................... 23-24, 25

*Amoco Production Co. v. Village of Gambell,*
        480 U.S. 531 (1987) ....................................................... 24-25, 25

*Citizens for Responsibility and Ethics in Washington v. FEC,*
        904 F.3d 1014 (D.C. Cir. 2018).................................. 9-10, 10, 18

*Columbia Gas Transmission Corp. v. FERC,*
        750 F.2d 105 (D.C. Cir. 1984)...................................................... 26

*Cmtys. Against Runway Expansion, Inc. v. FAA,*
        355 F.3d 678 (D.C. Cir. 2004)....................................................... 18

*Center for Biological Diversity v. FERC,*
        67 F.4th 1176 (D.C. Cir. 2023) ......................................12, 14, 18

*Cuomo v. NRC,*
        772 F.2d 972 (D.C. Cir. 1985)............................................. 19, 23

*Davis v. Pension Ben. Guar. Corp.,*
        571 F.3d 1288 (D.C. Cir. 2009)................................................... 10

*Delaware Riverkeeper Network v FERC,*
        45 F.4th 104 (D.C. Cir. 2022) ................................................ 12-13

*EarthReports, Inc. v. FERC,*
        828 F.3d 949 (D.C. Cir. 2016)............................................. 12, 14

*Food & Water Watch v. FERC,*
        28 F.4th 277 (D.C. Cir. 2022) ................................................... 16

*Cases chiefly relied upon are marked with an asterisk.

*In re Sealed Case,*
    77 F.4th 815 (D.C. Cir. 2023) ..................................................... 23

*Myersville Citizens for a Rural Community, Inc. v. FERC,*
    783 F.3d 1301 (D.C. Cir. 2015)............................................ 10, 26

*\*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................8-9, 9, 10, 19, 26

*Serono Laboratories, Inc. v. Shalala,*
    158 F.3d 1313 (D.C .Cir. 1998)................................................ 26

*Sherley v. Sebelius,*
    644 F.3d 393 (D.C .Cir. 2011).................................................. 10

*Sierra Club v. FERC,*
    672 F. App'x 38 (D.C .Cir. 2016) ............................................. 14

*Tri County Indus. v. District of Columbia,*
    104 F.3d 455 (D.C .Cir. 1997)................................................. 25

*\*Vecinos para el Bienestar de la Comunidad Costera v. FERC,*
    6 F.4th 1321 (D.C .Cir. 2021) ...................6, 6-7, 7, 11, 15, 16, 25

*Va. Petroleum Jobbers Ass'n v. FPC,*
    259 F.2d 921 (D.C .Cir. 1958)............................................ 23, 26

*Wash. Metro Area Transit Comm'n v. Holiday Tours, Inc.,*
    559 F.2d 841 (D.C .Cir. 1977)..................................................... 9

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ....................................................................... 9

*\*Wis. Gas Co. v. FERC,*
    758 F.2d 669 (D.C .Cir. 1985)...........................................9, 18, 19

iv

## ADMINISTRATIVE CASES:

*Fla. Se. Connection, LLC,*
    164 FERC ¶ 61,099 (2018) ........................................... .11-12, 12

*\*Rio Grande LNG, LLC,*
    183 FERC ¶ 61,046 (2023) ("Remand Order")............6, 7, 11, 13,
                13-14, 14, 15, 15-16, 16, 16-17
                17, 17-18, 20, 22, 24, 26-27

*\*Rio Grande LNG, LLC,*
    185 FERC ¶ 61,080 (2023) ("Remand Rehearing Order").....6, 7,
                11, 12, 13, 14, 17-18, 24, 26-27, 27

*\*Rio Grande LNG, LLC ,*
    186 FERC ¶ 61,021 (2024) ("Denial Order")............. 2-3, 7, 8, 19,
              19-20, 20, 21, 21-22, 22, 22-23, 24, 26-27, 27

## STATUTES:

Natural Gas Act
    Section 3, 15 U.S.C. § 717b ......................................................... 2

    Section 7, 15 U.S.C. § 717f ......................................................... 2

    Section 19, 15 U.S.C. § 717r...................................................... 16

## REGULATIONS:

    18 C.F.R. § 380.7(a) ............................................................ 14-15

    40 C.F.R. § 1502.21(c) .............................................6-7, 11, 13, 14

## OTHER AUTHORITIES:

*NEPA Guidance on Consideration of*
    *Greenhouse Gas Emissions and Climate Change*
    88 Fed. Reg. 1196 (Jan. 9, 2023) ................................................. 13

# GLOSSARY

| | |
|---|---|
| Act or NGA | Natural Gas Act |
| Br. | Petitioners' Opening Brief |
| Commission or FERC | Federal Energy Regulatory Commission |
| Denial Order | *Rio Grande LNG, LLC*, Order Denying Stay, 186 FERC ¶ 61,021 (Jan. 24, 2024) |
| EIS | In text, environmental impact statement; in citations, Final Environmental Impact Statement, Rio Grande LNG Project (Apr. 2019) |
| LNG | Liquefied natural gas |
| Mot. | Movant-Petitioners City of Port Isabel, *et al.*, Joint Motion to Stay or Expedite, filed on February 2, 2024 |
| NEPA | National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.* |
| P | The internal paragraph number within a FERC order |
| Project or Rio Grande Project | Rio Grande LNG Terminal and Rio Bravo Pipeline Project, the liquefied natural gas terminal and pipeline system at issue, approved by *Rio Grande LNG, LLC*, 169 FERC ¶ 61,131 (2019), *reh'g denied*, 170 FERC ¶ 61,046 (2020) |
| Project sponsors | Collectively, Rio Bravo Pipeline Company, LLC and Rio Grande LNG, LLC |

vii

| | |
|---|---|
| Remand Order | *Rio Grande LNG, LLC*, Order on Remand and Amending Section 7 Certificate, 183 FERC ¶ 61,046 (Apr. 21, 2023) |
| Remand Rehearing Order | *Rio Grande LNG, LLC*, Order Addressing Arguments Raised on Rehearing, 185 FERC ¶ 61,080 (Oct. 27, 2023) |
| Rio Bravo | Rio Bravo Pipeline Company, LLC |
| Rio Grande | Rio Grande LNG, LLC |
| Sierra Club | Collectively, movant-petitioners City of Port Isabel, the Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera |
| Terminal | The LNG Terminal approved by *Rio Grande LNG, LLC*, 169 FERC ¶ 61,131 (2019), *reh'g denied*, 170 FERC ¶ 61,046 (2020) |

# In the United States Court of Appeals
# for the District of Columbia Circuit

### Nos. 23-1174 and 23-1221 (consolidated)
_____

CITY OF PORT ISABEL, *ET AL.*,
*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent.*
_____

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION
_____

## OPPOSITION OF RESPONDENT
## FEDERAL ENERGY REGULATORY COMMISSION
## TO MOTION FOR STAY
_____

### INTRODUCTION

Movant-Petitioners City of Port Isabel, the Carrizo Comecrudo

Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and

Sierra Club (collectively, Sierra Club) ask this Court for the

extraordinary remedy of halting the construction of a liquefied natural

gas terminal and associated pipeline (collectively, Rio Grande Project or

Project) in southern Texas, pending judicial review of the Commission's careful public interest assessment.

On remand from this Court, the Commission addressed the discrete issues put to it by the Court and reaffirmed its authorization of Rio Grande LNG, LLC (Rio Grande) and Rio Bravo Pipeline Company, LLC (Rio Bravo) (collectively, Project sponsors) to construct and operate the Project pursuant to sections 3 and 7 of the Natural Gas Act, 15 U.S.C. §§ 717b, 717f.  The Commission found that nothing in its updated environmental analysis upset its earlier conclusion that the Project met the public interest standards of the Natural Gas Act. The Commission addressed all requests for agency rehearing on October 27, 2023, and filed the certified index to the record with this Court that day.  Merits briefing is well underway.

On November 24, Sierra Club requested that the Commission stay all Project authorization orders, pending resolution of these consolidated appeals.  The Commission denied Sierra Club's motion on January 24, 2024, citing a lack of imminent and irreparable harm while also addressing the harm to other parties and the public interest that would follow a stay.  *Rio Grande LNG, LLC*, Order Denying Stay,

2

186 FERC ¶ 61,021, PP 17, 25, 29-30 (Jan. 24, 2024) (Denial Order)

(Mot. Ex. 1).

Sierra Club now implores this Court to impose a judicial stay

blocking the Project pending the resolution of these appeals.  But Sierra

Club fails to satisfy the stringent requirements to obtain that

extraordinary remedy.  Sierra Club simply reiterates its opposition to

the Project and asserts generalized claims of environmental harm,

without accounting for construction and operating conditions intended

to mitigate claimed harm.  Simple disagreement with the Commission's

conclusions does not entitle Sierra Club to a stay.

The requested stay would upset the Commission's careful public

interest balance and disrupt the Project.  Courts have uniformly

rejected similar efforts to halt the effectiveness of the Commission's

natural gas infrastructure decisions prior to judicial review on the

merits.  In fact, in the past dozen years, courts have denied all requests

(whether labeled an "emergency" or not) for stays of the effectiveness of

Commission natural gas certificate or authorization orders, including:

- *New Jersey Conservation Foundation v. FERC*, Nos. 23-1064, *et al.* (D.C. Cir. Apr. 3, 2023) (denying stay of pipeline construction based on FERC's weighing of competing evidence);

- *Sierra Club v. FERC*, Nos. 20-1512, *et al.* (D.C. Cir. Feb. 19, 2021) (denying stay of pipeline construction based on challenges to evidence relied upon by FERC and to FERC's environmental analysis);

- *Deborah Evans v. FERC*, No. 20-1161 (D.C. Cir. Oct. 6, 2020) (denying summary vacatur and, alternatively, stay based on challenge to FERC's pipeline need finding);

- *Appalachian Voices v. FERC*, Nos. 17-1271, *et al.* (D.C. Cir. Feb. 2, 2018) (denying stay of pipeline construction based on challenge to FERC's environmental analysis);

- *Adorers of the Blood of Christ v. FERC*, No. 5:17-cv-3163 (E.D. Pa. Sept. 28, 2017) (denying preliminary injunction to stop Atlantic Sunrise pipeline construction and operation), on appeal, No. 17-3163 (3d Cir. Oct. 13, 2017) (denying injunction pending appeal);

- *Sierra Club v. FERC*, No. 16-1329 (D.C. Cir. Nov. 17, 2016) (denying stay of pipeline construction based upon a challenge to FERC's indirect impacts analysis);

- *City of Boston Delegation v. FERC*, No. 16-1081 (D.C. Cir. Oct. 28, 2016) (denying stay of pipeline in-service date based upon a challenge, in part, to FERC's cumulative impacts analysis); and

- *Catskill Mountainkeeper v. FERC*, No. 16-345 (2d Cir. Feb. 24, 2016) (denying stay of pipeline construction based upon a challenge to FERC's indirect and cumulative impacts analyses).[1]

---

[1] Other court orders denying stays of FERC natural gas infrastructure orders include: *In re Clean Air Council*, No. 15-2940 (3d Cir. Dec. 8, 2015); *Town of Dedham v. FERC*, No. 1:15-cv-12352, 2015 WL 4274884 (D. Mass. July 15, 2015); *EarthReports, Inc. v. FERC*, No. 15-1127 (D.C. Cir. June 12, 2015); *In re Stop the Pipeline*,

Sierra Club—which does not acknowledge, much less contest, anything the Commission actually explained in its Denial Order—has not presented any legitimate reason why this Court should reach a different conclusion here.[2]  That this is a case on remand makes no difference; in fact, this Court already has decided not to stay the effectiveness of Commission orders in this case.  The Court did so when it chose not to vacate the Commission's pre-remand authorization of the Project, pending further Commission explanation (now provided in the agency's remand orders).

_____

No. 15-926 (2d Cir. Apr. 21, 2015); *In re Del. Riverkeeper Network*, No. 15-1052 (D.C. Cir. Mar. 19, 2015); *Minisink Residents for Envt'l Pres. and Safety v. FERC*, No. 12-1481 (D.C. Cir. Mar. 5, 2013); *Feighner v. FERC*, No. 13-1016 (D.C. Cir. Feb. 8, 2013); *Del. Riverkeeper Network v. FERC*, No. 13-1015 (D.C. Cir. Feb. 6, 2013); *In re Minisink Residents for Envt'l Pres. and Safety*, No. 12-1390 (D.C. Cir. Oct. 11, 2012); *Coal. for Resp. Growth & Res. Conservation v. FERC*, No. 12-566 (2d Cir. Feb. 28, 2012); and *Summit Lake Paiute Indian Tribe and Defenders of Wildlife v. FERC*, Nos. 10-1389 & 10-1407 (D.C. Cir. Jan. 28, 2011 & Feb. 22, 2011).

[2] Nor does Sierra Club in its motion cite to, much less base any argument on, the dissent of one Commissioner here.  *See infra* p. 23 n.8 (any belated argument based on dissent now forfeited).

5

## BACKGROUND

The challenged orders authorize Rio Grande and Rio Bravo to construct and operate the Project. *Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC*, 183 FERC ¶ 61,046 (Apr. 21, 2023) (R.3011) (Remand Order), *reh'g denied*, 185 FERC ¶ 61,080 (Oct. 27, 2023) (R.3080) (Remand Rehearing Order). In the agency proceedings that led to these orders, Commission staff issued an environmental impact statement (EIS) for the Project in 2019.

In 2021, this Court remanded the case without vacatur, primarily to address issues regarding the Commission's National Environmental Policy Act (NEPA) analyses. *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021) (*Vecinos*).[3] The Court gave the Commission three discrete tasks on remand: (1) reconsider the geographic scope of its environmental justice analysis, (2) explain whether 40 C.F.R. § 1502.21(c) requires the use of the social cost of carbon protocol, and (3) assess whether the response to either

---

[3] While the neighboring "Texas terminal" was part of the analysis in *Vecinos*, 6 F.4th at 1325, Sierra Club's motion here involves only the Rio Grande Terminal and Rio Bravo pipeline in Case Nos. 23-1174 & 23-1221, Mot. 5 & n.4.

task altered its previous conclusion that the Project is consistent with the public interest under the Natural Gas Act. *Id.* at 1329-31. The Court declined to halt Project development by vacating the orders, reasoning that it is "reasonably likely" the Commission could "redress its failure of explanation . . . while reaching the same result." *Id.* at 1332.

On remand, the Commission supplemented and updated its analyses regarding greenhouse gases and environmental justice. It then reaffirmed its public interest findings under the Natural Gas Act. Denial Order P 5. The Commission found both the Terminal and pipeline portions of the Project to be environmentally acceptable, given that the authorization conditions imposed would ensure that the impacts of the Project are consistent with those anticipated by Commission staff. Remand Order PP 208-209. Indeed, the Commission imposed extensive mitigation measures for impacted resources, including impacts to aquatic resources, wildlife, endangered species, recreation, and tourism. *See* Denial Order P 17 & nn.35-39 (collecting citations). The Commission reaffirmed these findings on rehearing. *See* Remand Rehearing Order PP 2, 12-76.

The Commission subsequently denied Sierra Club's November 2023 motion to stay the agency orders and associated construction. It found that Sierra Club did not demonstrate that construction during the pendency of the appeal would cause irreparable harm. *See* Denial Order PP 17-27. It also concluded that a stay would delay the Project, thereby harming the Project sponsors and their customers. *Id.* P 28. The Commission further concluded that the broader public interest cuts against granting a stay. *Id.* P 29. One Commissioner dissented from the orders on remand and from the Denial Order.

At present, construction has begun on two aspects of the Terminal, a levee and a receiving dock for material shipments. *See id.* PP 7, 10. These are but the first steps in a years-long, multi-step process. *Id.* PP 7-10, 24, 28 n.83. On January 26, 2024, Commission staff authorized several further underground construction activities at the Terminal site. *See* Mot. Ex. 2 & 3. Construction of the pipeline portion of the Project has not commenced. Denial Order P 10 n.15.

## ARGUMENT

A stay is an "intrusion into the ordinary processes of administration and judicial review," and thus granting one "is not a

8

matter of right" but instead a case-specific "exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 427, 433 (2009) (citations omitted).

To obtain this extraordinary remedy, Sierra Club must establish: (1) a strong showing that it is likely to prevail on the merits of its appeal; (2) that, without such relief, it will be irreparably injured; (3) a lack of substantial harm to other interested parties; and (4) that the public interest favors a stay. *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see also Nken*, 556 U.S. at 434. Failure on any factor dooms Sierra Club's claim. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 673-74 (D.C. Cir. 1985) (per curiam).

In this context, courts "must balance the competing claims of injury and must consider the [decision's] effect on each party." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Courts also "pay particular regard for the public consequences" of extraordinary remedies. *Id.* (citation omitted).

Sierra Club has not shown that extraordinary relief is warranted here. In fact, Sierra Club "fails every prong" of the stay pending appeal

test.  *See Citizens for Resp. and Ethics in Washington v. FEC*, 904 F.3d

1014, 1017 (D.C. Cir. 2018).

## I. Sierra Club Cannot Show Likelihood of Success on the Merits

To prevail, Sierra Club must demonstrate a "substantial"

likelihood of success on the merits of its appeal.  *Id.* at 1017-18 (citation

omitted).  This is a "strong showing" that goes beyond a "mere

possibility" of relief.  *Nken*, 556 U.S. at 434 (citations omitted).  And in

looking to the merits of the appeal, this Court applies the same

principles of administrative deference that would govern on its eventual

merits review.  *See, e.g., Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C.

Cir. 2011); *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1293-94

(D.C. Cir. 2009); *see also, e.g., Myersville Citizens for a Rural Cmty., Inc.

v. FERC*, 783 F.3d 1301, 1308 (D.C. Cir. 2015) (because certificate

decisions are "peculiarly within the discretion of the Commission," the

Court does not "substitute its judgment for that of the Commission"

(citations omitted)).

### A.     The Commission Reasonably and Thoroughly Addressed Sierra Club's Arguments on Greenhouse Gas Emissions

Sierra Club argues that the Commission failed to properly respond to the *Vecinos* remand regarding greenhouse gas emissions.  Mot. 7.[4] But, as Sierra Club acknowledges, *Vecinos* only required the Commission to "*explain* whether" the Council on Environmental Quality's regulation at 40 C.F.R. § 1502.21(c) "calls for [the Commission] to apply the social cost of carbon protocol or some other analytical framework . . . 'generally accepted in the scientific community'[.]"  6 F.4th at 1329-30 (emphasis added).  The Commission explained in detail why the regulation does not require the use of the social cost of carbon protocol in this proceeding.  *See* Remand Order PP 90-101; Remand Rehearing Order PP 53-61.

#### 1.     Project-Level Review

First, as the Commission has explained, the protocol "was not developed for project level review."  Remand Order PP 92-93 & n.207 (citing *Fla. Se. Connection, LLC*, 164 FERC ¶ 61,099, PP 35-37 (2018)).

---

[4] In its opening brief, Sierra Club also contends that additional NEPA processes were required on remand.  *See, e.g.,* Br. 24-39, 61-70. Sierra Club does not rely on those claims here, however.  Mot. 7 n.5.

Rather, it was "developed to aid the monetary cost-benefit analysis of rulemakings." *Florida Southeast*, 164 FERC ¶ 61,099, P 35 n.103. Because the Commission does not – and often cannot – quantitatively capture all project benefits in its NEPA review, using the protocol on only one side of the equation (costs) would thus result in a "distorted cost-benefit analysis." *Id.* P 28.

Moreover, "it remains the case that there is a lack of consensus about how to apply the social cost of carbon on a long-time horizon." Remand Rehearing Order P 59 n.176. This results in significant variation in output supporting the idea that the tool is "inadequately accurate to warrant inclusion under NEPA." *EarthReports, Inc. v. FERC*, 828 F.3d 949, 956 (D.C. Cir. 2016); *see also Center for Biological Diversity v. FERC*, 67 F.4th 1176, 1184 & n.4 (D.C. Cir. 2023) (collecting cases).

Thus, while the protocol may be generally accepted in the scientific community for rulemakings, the Commission found that such a consensus does not exist for project-level reviews. *See* Remand Rehearing Order PP 56-57; *see also Del. Riverkeeper Network v. FERC*, 45 F.4th 104, 111 (D.C. Cir. 2022) (upholding determination that

protocol is not appropriate for project-specific review).  Sierra Club is therefore wrong when it argues that the Commission did not address how the protocol is used.  *Compare* Mot. 7-8 *with* Remand Order PP 92-93 *and* Remand Rehearing Order PP 56-57.

### 2.    Significance Threshold

Second, section 1502.21(c) does not mandate use of the protocol because it does not "enable the Commission to determine credibly" whether a project's emissions "are significant or not significant in terms of their impact on global climate change."  Remand Order P 93; *see also* Remand Rehearing Order P 57.  "[T]here are currently no criteria to identify what monetized values are significant for NEPA purposes." Remand Order P 93 n.210 (citation omitted); *see also NEPA Guidance on Consideration of Greenhouse Gas Emissions and Climate Change*, 88 Fed. Reg. 1196, 1200 (Jan. 9, 2023) ("This guidance does not establish any particular quantity of GHG emissions as 'significantly' affecting the quality of the human environment.").  Thus, while the Commission provided an estimate of the social cost of the Project's greenhouse gas emissions for informational purposes, that information alone does not determine whether or not the Project has a significant

impact on climate change.  Remand Order PP 93-101.

Sierra Club contends that the Commission was required to go further and calls on the Commission to "make[] its own judgments" about the Project's climate change impacts.  Mot. 8-9.  But the question on remand was whether 40 C.F.R. § 1502.21(c) requires use of the social cost of carbon protocol.  That regulation addresses "methods generally accepted in the scientific community," not policy calls by regulators. § 1502.21(c)(4); *see also* Remand Rehearing Order P 59.  Furthermore, Sierra Club's argument ignores that this Court has repeatedly found that the Commission has "no obligation . . . to consider the social cost of carbon."  *Center for Biological Diversity*, 67 F.4th at 1184; *see also EarthReports*, 828 F.3d at 956 (same); *Sierra Club v. FERC*, 672 F. App'x 38, 39 (D.C. Cir. 2016) (per curiam) (same).  And the Commission explained in detail that, among other issues, "there currently are no accepted tools or methods for the Commission to use to determine significance" even with social cost of carbon information.[5] *See* Remand Order P 101; Remand Rehearing Order PP 58-60.

---

[5] Sierra Club also cites to 18 C.F.R. § 380.7(a), but that section simply provides that that the "staff conclusion section" in an EIS "will

**B.    The Commission Reasonably and Thoroughly Addressed Sierra Club's Arguments on Environmental Justice**

Sierra Club also challenges the methodology of the Commission's updated environmental justice analysis.  Mot. 9-12.  The *Vecinos* Court found that the Commission failed to adequately justify its choice to examine environmental justice impacts within a two-mile radius of the Project, when some impacts, such as air quality, may extend farther.  *See* 6 F.4th at 1330-31.

The Commission responded by expanding the geographic scope of its analysis.  *See* Remand Order PP 118-119 & n.268 (explaining that Commission staff reassessed Project impacts on communities using a 50-kilometer radius, consistent with analogous EPA practices for air quality impacts).  And, within that radius, the Commission assessed ten categories of potential impacts from the Project.  The Commission concluded that Project impacts would be disproportionately borne by environmental justice communities.  But, with appropriate mitigation or planning and with only one limited exception noted in the EIS

---

include summaries of [t]he significant environmental impacts of the proposed action."  *Id.*

15

(cumulative visual impacts near the Terminal after construction),[6] none would be significant.  *See id.* PP 119-206.

Having previously claimed that the geographic scope of the Commission's analysis was too narrow, *see Vecinos*, 6 F.4th at 1330, Sierra Club now contends that the Commission's effects analysis was too broad, *i.e.*, included too much demographic information.  Mot. 10-11. But Sierra Club failed to preserve this claim before the agency on rehearing.  *See* Reh'g Req. 29-30 (R.3021); *see also* 15 U.S.C. § 717r(b); *Food & Water Watch v. FERC*, 28 F.4th 277, 284 (D.C. Cir. 2022) (the Act's issue exhaustion requirement is jurisdictional).

This claim also lacks merit.  Sierra Club does not dispute that operational air quality impacts could occur as far as 50 kilometers away from a project, the distance the Commission used here on remand. *Compare* Br. 43 *with* Remand Order PP 118-119.  For each relevant Project site, the Commission identified which of the potentially affected communities were environmental justice communities.  *See, e.g.,* Remand Order PP 76, 119, 165, 204, 205.  The Commission then went

---

[6] *See* Remand Order PP 163, 206.  Sierra Club does not allege any legal error related to this finding.  *See* Br. 40-50; Mot. 6-12.

on to analyze the impacts expected to arise from each Project site—i.e.,
wetlands, visual, traffic, noise, recreational, air quality, safety, and
socioeconomic impacts—on the identified communities. *See id.* PP 119-
163 (Terminal impacts), 164-202 (pipeline impacts). This scope
encompassed all possible impacts from each Project site on
environmental justice communities. *See* EIS 4-394 (R.1277) (identifying
potential scope of impacts).

Sierra Club argues that the Commission failed to identify the
demographics of affected communities. Mot. 11. Not true—the
Commission identified the demographics of *all* potentially affected
communities. *See, e.g.,* Remand Order PP 119, 165. Based on detailed
air modeling data,[7] the Commission concluded that Project operations
would not cause air pollutant concentrations to exceed EPA air
standards, which are designed "to protect sensitive populations." *Id.*
PP 146-50, 151, 165. Thus, the communities within 50 kilometers of the
Terminal and the pipeline's compressor station would not face

---

[7] The record here includes both air quality modeling results and
demographic information down to the census block level. *See* Jan. 27,
2023 Rio Grande Resp., Attach. 1 at 27-28 & Appendix A (R.2967);
Remand Order Appendix B.

significant air quality impacts. *See id.* PP 118, 165; Remand Rehearing Order P 32. These methodological choices were both reasonable and reasonably explained.

The Commission's analysis satisfied NEPA's hard look requirement and is entitled to deference. *See Cmtys. Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 689 (D.C. Cir. 2004). Given that the Court has "consistently decline[d] to flyspeck" the Commission's NEPA analysis, *Center for Biological Diversity*, 67 F.4th at 1182, Sierra Club fails to demonstrate a strong likelihood of success on the merits.

## II. Sierra Club Has Not Established Irreparable Injury

Sierra Club's claim of irreparable injury absent a stay must be "both certain and great"—it must be "actual and not theoretical." *Citizens for Resp. and Ethics*, 904 F.3d at 1019 (quoting *Wis. Gas*, 758 F.2d at 674). A stay "will not be granted against something merely feared as liable to occur at some indefinite time"; the party seeking relief must show that "the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Wis. Gas*, 758 F.2d at 674 (cleaned up).

This requires "proof indicating that the harm is certain to occur in the near future." *Id.* Unsupported assertions are insufficient. *Cuomo v. NRC*, 772 F.2d 972, 976 (D.C. Cir. 1985) ("only vaguely sketch[ing] the contours of . . . asserted harm" is not enough). In addition, any imminent and certain harm must be balanced against the other stay factors. *See Nken*, 556 U.S. at 433-34 (noting that a stay is a case-specific exercise of judicial discretion).

Here, as the Commission found, Sierra Club has not shown that it will be irreparably harmed absent a stay. *See* Denial Order PP 17-27 (finding only generalized claims of harm that draw on conclusions made in the EIS, rather than identifying specific, imminent injuries).

## A.    Recreational Users, Wetlands, and Tourism

Sierra Club identifies several anticipated Project impacts that it claims will harm the movants and their members. *See* Mot. 12-15. These include air quality and other impacts on recreational users of areas close to the Project, and alleged impacts on tourism in the area. All of these concerns were detailed in the EIS and addressed by the Commission in its orders. *See* Denial Order PP 16-17, 19-25.

None rises to the level of imminent and irreparable injury that merits immediate relief. *Id.* PP 25-26.

*Air impacts.* Sierra Club argues that several of its members will be harmed by air emissions from construction, including Mr. Juan Mancias, who recreates in the Project area and uses supplemental oxygen. Mot. 14-15. But, as the Commission explained, the potential construction-related air impacts at issue here are not imminent—they relate to overlapping activities that will occur well after the first stage of construction. Denial Order P 19; *see also id.* P 24 (construction anticipated to take seven years); Remand Order PP 139-142 (addressing "the air quality impacts of overlapping construction, commissioning, and terminal operations" when expected to occur); EIS at 4-259 (commissioning and start-up emissions expected "between Year 4 and Year 7"). In any event, in part due to Commission-directed mitigation and monitoring activities, the Project is not expected to result in air standard exceedances during construction at all. *See* Denial Order P 19; Remand Order PP 141-142. And as the Commission noted, "there are other recreation sites nearby." Denial Order P 19.

20

*Recreation, wetlands, and wildlife-viewing opportunities*. Sierra Club further contends that anticipated Project activities will imminently and irreparably harm their members who recreate nearby, because the Project sponsors will not restore the loss of site-specific wetland, recreation, and wildlife-viewing opportunities. Mot. 13-14, 16. This claim fails for several reasons, including that the Commission found that there would not be significant impacts to recreation and wildlife as a result of the loss of wetlands at Project sites. Denial Order P 23. There will be no net loss of wetlands in the same watershed, nor of recreational or fishing opportunities, given the anticipated scope of construction and of off-site mitigation activities. *See id.* Wildlife viewing opportunities would remain available in the area despite construction. *See id.* PP 19, 21, 23, 26.

The Commission acknowledged that some individuals may be inconvenienced by Project construction and may not be able to use impacted lands in quite the same manner as before. *See* Denial Order P 26. While it appreciates those concerns, the Commission found that such impacts do not amount to irreparable harm, particularly in the

absence of a showing that affected resources are unique and that other, similar opportunities are not available.  *Id.*

*Tourism.*  Sierra Club also asserts that the Project will have a permanent impact on tourism in the region and affect movant City of Port Isabel.  Mot. 14, 15-16.  It fails to mention, however, that the Commission did not find these impacts substantial.  *See* Denial Order P 22.  In addition, the visual and noise impacts that may occur at the Terminal site itself are not expected to decrease tourism or visitation in the general Project area.  Remand Order PP 124-126.  Thus, the Commission reasonably concluded that Sierra Club failed to explain how these impacts imminently harm any of its members or movants.  Denial Order P 22.

## B.    Ocelot Impacts

Finally, Sierra Club contends that through habitat loss and traffic increases, Project activities are likely to adversely affect endangered ocelots that live in the area.  Mot. 13, 14.  But Sierra Club does not explain in any detail the probability, severity, or imminence of these effects.  Nor does it mention that Terminal site clearance has already occurred, that mitigation measures have been imposed, and that the

22

U.S. Fish and Wildlife Service concluded that the Rio Grande Project is not likely to jeopardize the continued existence of the ocelot.  Denial Order PP 20-21.  Indeed, the Commission gave extensive consideration to these concerns—potential ocelot impacts have even prompted a proposed amendment to the Project's pipeline route.  *See id.* P 20 & n.55.[8]  Sierra Club's concerns about ocelots do not move beyond speculation, which does not establish that harm is immediate and irreparable.  *See Cuomo*, 772 F.2d at 976.

## III.  A Stay Will Substantially Injure Other Parties

The Court must also consider whether "a stay would have a serious adverse effect on other interested persons," as the issuance of a stay is an equitable judgment that affects all interested parties, not just the movant.  *Va. Petroleum Jobbers Ass'n. v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).  This Court has recognized that permit holders have "a substantial interest in the continued effect of the permit and in

---

[8] Commissioner Clements' dissent made additional arguments regarding ocelot impacts, which are addressed in the Denial Order. *See* Denial Order Dissent PP 8-12; Denial Order PP 20-21.  But Sierra Club has not raised those arguments—or even cited the dissent—and it is too late to do so now.  *See In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023) (argument first raised in reply supporting motion is forfeited).

proceeding with a project without delay." *See 3883 Conn. LLC v. Dist. of Columbia*, 336 F.3d 1068, 1074 (D.C. Cir. 2003).

A stay here would effectively enjoin Commission orders and Project development, which the Commission found to be needed and consistent with the public interest. *See* Remand Rehearing Order PP 50-52; Remand Order P 208. The Commission also found that Rio Grande, Rio Bravo, and their customers who are relying on the Project would be harmed by delay. Denial Order PP 28-29 & n.85; *see also* Rio Grande Answer to Motion for Stay at 12-13, FERC Docket No. CP16-454-003 (Accession No. 20231211-5174; filed Dec. 11, 2023) (Rio Grande Answer) (a stay would result in substantial Project disruption and uncertainty, significant additional costs, and contractor demobilization), https://perma.cc/RK9B-T578. Despite Sierra Club's contrary suggestions, *see* Mot. 17-18, these near-term Project activities are not contingent on the yet-to-be-analyzed carbon capture-related proposals still pending before the Commission in a separate docket. *See* Rio Grande Answer at 11.

Sierra Club discounts any impact on the Project sponsors (and presumably also on their customers) as "solely economic" (Mot. 17), and

contends that alleged injury to the environment, seemingly without more, should lead to extraordinary relief. Mot. 16-17 (citing *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987)).

But this ignores the decisions of this Court, both generally and in the earlier phase of this case. *See 3883 Connecticut*, 336 F.3d at 1074; *Tri County Industries, Inc. v. Dist. of Columbia*, 104 F.3d 455, 461 (D.C. Cir. 1997) ("The property interest here—the entitlement to continue construction without unfair interference—is substantial."); *Vecinos*, 6 F.4th at 1332 (remanding without vacatur in part to avoid potentially needless disruption of the Project). It also ignores the circumstances of the *Gambell* case that Sierra Club cites, in which the Court specifically found that financial commitments by project developers count in "the balance of harms" and even outweighed the improbable alleged injury there. 480 U.S. at 545.

Furthermore, halting the Project would harm not only the Project sponsors, but also the off-taker parties that expect to receive natural gas service. Denial Order PP 28-29 & n.85. And Rio Grande indicated that local employment may also be negatively impacted by the issuance of a stay. *See* Rio Grande Answer at 13.

25

## IV.    The Public Interest Does Not Favor a Stay

The public interest is a "crucial" factor in "litigation involving the administration of regulatory statutes designed to promote the public interest." *Va. Petroleum Jobbers*, 259 F.2d at 925.  The Natural Gas Act charges FERC with regulating the interstate transportation of natural gas in the public interest.  *See, e.g., Columbia Gas Transmission Corp. v. FERC*, 750 F.2d 105, 111-12 (D.C. Cir. 1984) (Commission has "wide discretion to balance competing equities against the backdrop of the public interest" under the Act).

Therefore, as the regulator tasked with determining the public interest, the Commission's views are a key barometer of the public interest for purposes of deciding a stay request.  *See Nken*, 556 U.S. at 435-36; *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1326-27 (D.C. Cir. 1998); *see also Myersville*, 783 F.3d at 1307-08 (discussing public convenience and necessity determinations).

A stay cuts against the public interest.  In reaffirming its Natural Gas Act section 3 and 7 conclusions on remand, the Commission found that the Terminal and pipeline portions of the Project are consistent with the public interest and required by the public convenience and

26

necessity, respectively. *See, e.g.*, Remand Order PP 3, 208; Remand Rehearing Order PP 51-52; Denial Order P 5; *see also* Denial Order P 28 (noting that the Department of Energy also approved Project exports following its public interest analysis). The Commission found that none of the information analyzed and disclosed in its environmental analysis on remand undermined those conclusions. Remand Rehearing Order PP 51-52. In light of the harm that could be caused by a stay, and the conditions imposed to minimize adverse environmental impacts, the Commission reasonably found that granting a stay here would not be in the public interest. Denial Order PP 29-30 & n.85. The Court should find the same.

## CONCLUSION

For the foregoing reasons, Sierra Club's stay motion should be denied, and the case should continue to final briefing and oral argument in the normal course of appellate review. In light of the advanced state of briefing—the Commission filed its merits answering brief on February 5—there is no need for further expedition. But the Commission does not object to Sierra Club's alternative request, Mot. 4-5, for earlier filing of the Joint Appendix and Final Briefs.

27

Respectfully submitted,

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

Robert M. Kennedy
Senior Attorney

*/s/ Jason T. Perkins*
Jason T. Perkins
Attorney

Federal Energy Regulatory Commission
Washington, D.C.  20426
Tel.: (202) 502-6413
Email: jason.perkins@ferc.gov

February 12, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this opposition complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,108 words.

I further certify, pursuant to Fed. R. App. P. 27(d)(1)(E), that this document complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Century Schoolbook 14-point font using Microsoft Word.

*/s/ Jason T. Perkins*
Jason T. Perkins
Attorney

Federal Energy Regulatory Commission
Washington, D.C.  20426
Tel.: (202) 502-6413
Email: jason.perkins@ferc.gov

February 12, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 12, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


<u>/s/ *Jason T. Perkins*</u>
Jason T. Perkins
Attorney

Federal Energy Regulatory Commission
Washington, D.C.  20426
Tel.: (202) 502-6413
Email: jason.perkins@ferc.gov

February 12, 2024