**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 23-1174(L), 23-1221

—————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

—————————————————————

CITY OF PORT ISABEL, et al.,

*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent*,

RIO BRAVO PIPELINE COMPANY, LLC, and
RIO GRANDE LNG, LCC,

*Respondent-Intervenors*.

———————————————

On Petition for Review of Orders of the Federal Energy Regulatory Commission,
183 FERC ¶ 61,046 (Apr. 21, 2023) and 185 FERC ¶ 61,080 (Oct. 27, 2023)

———————————————

**JOINT OPPOSITION TO MOTION TO STAY OR EXPEDITE
FOR RESPONDENT-INTERVENORS**

———————————————

Jeremy C. Marwell
Matthew X. Etchemendy
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
jmarwell@velaw.com

John Longstreth
Varu Chilakamarri
David L. Wochner
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Phone: 202.778.9000
varu.chilakamarri@klgates.com

*Counsel for Respondent-Intervenor
Rio Bravo Pipeline Company, LLC*

*Counsel for Respondent-
Intervenor Rio Grande LNG, LLC*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Intervenors Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC submit this certificate as to parties, rulings, and related cases.

1. **Parties and *Amici*.**  The parties who have appeared before the Court are listed in Petitioners' Circuit Rule 28(a)(1) certificate.

***Circuit Rule 26.1 Disclosures.***  Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC, both filed Corporate Disclosure Statements on August 9, 2023.

2. **Rulings Under Review.**  The Petitioners seek review of two orders of the Federal Energy Regulatory Commission ("FERC"):  *Rio Grande LNG, LLC*, 183 FERC ¶ 61,046 (April 21, 2023), R. 3011; and *Rio Grande LNG, LLC*, 185 FERC ¶ 61,080 (October 27, 2023), R. 3080.

3. **Related Cases.**  The FERC orders challenged in this case concern the Rio Grande LNG project and were issued in response to this Court's remand in *Vecinos Para el Bienestar de la Comunidad Costera* ("*Vecinos*") *v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021).  The *Vecinos* court also remanded FERC orders authorizing the Texas LNG project, which is proposed to be constructed in the same region as the Rio Grande LNG project.  Petitioners have challenged FERC's Texas LNG remand orders in *City of Port Isabel, et al. v. FERC*, Nos. 23-1175, *et al.*  The

Court has ordered that the instant case and No. 23-1175, *et al.* be scheduled for

oral argument on the same day and before the same panel.  ECF No. 2027253.

Date: February 12, 2024

Respectfully submitted,

*/s/ Jeremy C. Marwell*
*(by permission)*

*/s/ John Longstreth*

Jeremy C. Marwell
Matthew X. Etchemendy
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
jmarwell@velaw.com

John Longstreth
David L. Wochner
Varu Chilakamarri
K&L Gates LLP
1601 K Street, NW
Washington, DC 20006
Phone: 202.778.9000
john.longstreth@klgates.com

*Counsel for Respondent-Intervenor*
*Rio Bravo Pipeline Company, LLC*

*Counsel for Respondent-*
*Intervenor Rio Grande LNG, LLC*

ii

## **TABLE OF CONTENTS**

**Page**

Certificate as to Parties, Rulings, and Related Cases ................................................ i

Table of Authorities ............................................................................................. iv

Glossary................................................................................................................ vii

Argument................................................................................................................4

    I.    Petitioners Are Not Entitled To A Stay.........................................................4

        A.    Petitioners Have Made No Showing Of Likely Success On The Merits..................................................................................................4

        B.    Petitioners Make No Colorable Showing of Irreparable Harm ..........10

        C.    A Stay Would Substantially Harm Rio Grande, Rio Bravo, and Many Others .......................................................................................15

        D.    A Stay Would Harm The Public Interest ...........................................21

    II.  Respondent-Intervenors Take No Position On The Request For Expedition....................................................................................................22

Conclusion ..........................................................................................................23

Certificate of Compliance ..................................................................................24

Certificate of Service .........................................................................................25

iii

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Air Canada v. DOT*,
   148 F.3d 1142 (D.C. Cir. 1998)....................................................................5

*Alabama Association of Realtors v. HHS*,
   594 U.S. __, 141 S. Ct. 2485 (2021)..........................................................16

*Amoco Production Co. v. Vill. of Gambell*,
   480 U.S. 531 (1987).....................................................................................20

*Apache Survival Coal.* v. *United States*,
   21 F.3d 895 (9th Cir. 1994) ........................................................................18

*Appalachian Voices v. FERC*,
   Nos. 17-1271, 2019 WL 847199 (D.C. Cir. Feb. 2, 2018)..........................14

*Birckhead v. FERC*,
   925 F.3d 510 (D.C. Cir. 2019)......................................................................6

*Chaplaincy of Full Gospel Churches* v. *England*,
   454 F.3d 290 (D.C. Cir. 2006)...............................................................10, 16

*City of Boston v. FERC*,
   897 F.3d 241 (D.C. Cir. 2018).....................................................................14

*Communities Against Runway Expansion, Inc. v. F.A.A.*,
   355 F.3d 678 (D.C. 2004) .............................................................................9

*Ctr. for Biological Diversity v. FERC*,
   67 F.4th 1176 (D.C. Cir. 2023).....................................................................6

*Cuomo* v. *U.S. Nuclear Regulatory Comm'n*,
   772 F.2d 972 (D.C. Cir. 1985).......................................................................4

*Dangerfield Island Protective Soc'y* v. *Lujan*,
   920 F.2d 32 (D.C. Cir. 1990) ................................................................. 17-18

iv

*Dep't of Transp. v. Pub. Citizen*,
541 U.S. 752 (2004) ............................................................5

*Earth Reports, Inc. v. FERC*,
No. 15-1127, (D.C. Cir. June 12, 2015) ............................22

*Food & Water Watch v. FERC*,
28 F.4th 277 (D.C. Cir. 2022) ............................................8

*Fund for Animals* v. *Frizzell*,
530 F.2d 982 (D.C. Cir. 1975) ....................................14, 15

*General Motors Corp.* v. *Harry Brown's, LLC*,
563 F.3d 312 (8th Cir. 2009) ............................................19

*Monsanto v. Geertson Seed Farms*,
561 U.S. 139 (2010)..........................................................20

*Mylan Pharms., Inc.* v. *Shalala*,
81 F. Supp. 2d 30 (D.D.C. 2000)......................................15

*Natural Res. Def. Council* v. *U.S. Nuclear Regulatory Comm'n*,
606 F.2d 1261 (D.C. Cir. 1979) ........................................21

*Newdow* v. *Bush*,
355 F. Supp. 2d 265 (D.D.C. 2005) ..................................15

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................4

*Reynolds Metals Co.* v. *FERC*,
777 F.2d 760 (D.C. Cir. 1985) ..........................................10

*Rio Grande LNG, LLC*,
183 FERC ¶ 61,046 (April 21, 2023) ("Remand Order") .........................2, 4, 5,
.............................................................6, 7, 9, 10, 11, 13

*Rio Grande LNG, LLC*,
185 FERC ¶ 61,080 (October 27, 2023) ("Rehearing Order")....................4, 6, 7

*Shrimpers & Fishermen of the RGV* v. *U.S. Army Corps of Eng'rs*,
56 F.4th 992 (5th Cir. 2023) ..............................................12

*Sierra Club v. Dep't of the Interior*,
   990 F.3d 898 (5th Cir. 2021) ...................................................................... 11-12

S*ierra Club v. FERC*,
   867 F.3d 1357 (D.C. Cir. 2017)............................................................14

*Sierra Club v. FERC*,
   Nos. 20-1512, 2021 WL 1044965 (D.C. Cir. Feb. 19, 2021)............................14

*United States v. Van Smith*,
   530 F.3d 967 (D.C. Cir. 2008).........................................................6, 7

*Va. Petroleum Jobbers v. Fed. Power Comm'n*,
   259 F.2d 921 (D.C. Cir. 1958)...................................................13

*Vecinos Para el Bienestar de la Comunidad Costera v. FERC*,
   6 F.4th 1321 (D.C. Cir. 2021)............................................. 1-2, 4, 8, 9

*Vecinos Para el Bienestar de la Comunidad Costera v. FERC*,
   No. 20-1045, 2021 WL 3716769 (D.C. Cir. Aug. 3, 2021) ................................2

*Western Watersheds Project* v. *Salazar*,
   692 F.3d 921 (9th Cir. 2012) ............................................................19

*Wisconsin Gas Co.* v. *FERC*,
   758 F.2d 669 (D.C. Cir. 1985)....................................................10, 16

**Statutes**

15 U.S.C. § 717(a) ......................................................................................3

15 U.S.C. § 717b(a) ...............................................................................21

15 U.S.C. § 717r ..................................................................................6, 8, 21

**Other Authorities**

18 C.F.R. § 380.7 .....................................................................................6

40 C.FR. § 51 ...........................................................................................9

40 C.F.R. § 1502.21(c)..........................................................................4, 5, 6

# GLOSSARY

**Commission** or **FERC**    refers to Federal Energy Regulatory Commission

**EIS**    in the text refers to Environmental Impact Statement; in citations it refers to the Final Environmental Impact Statement, Rio Grande LNG Project (Apr. 2019) (R. 1277)

**GHG**    refers to greenhouse gas

**LNG**    refers to liquefied natural gas

**NEPA**    National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.;*

**Pipeline**    refers to the Rio Bravo Pipeline;

**Project**    refers to the Pipeline and the LNG Terminal, together;

**R.**    refers to a record document by its Record Item Number, as listed on the Certified Index to the Record in this case (Doc. 2024262), filed October 27, 2023

**Remand Order**    *Rio Grande LNG, LLC*, 183 FERC ¶ 61,046 (April 21, 2023) (R. 3011)

**Rehearing Order**    *Rio Grande LNG, LLC*, 185 FERC ¶ 61,080 (October 27, 2023) (R. 3080)

**Rio Bravo**    refers to Respondent-Intervenor Rio Bravo Pipeline Company, LLC

**Rio Grande**    refers to Respondent-Intervenor Rio Grande LNG, LLC

**Terminal**    refers to the Rio Grande LNG Terminal

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| City of Port Isabel, et al. | ) | |
| | ) | |
| Petitioners | ) | |
| | ) | No. 23-1174 |
| v. | ) | |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## RESPONDENT-INTERVENORS'
## JOINT OPPOSITION TO MOTION TO STAY OR EXPEDITE[1]

For years, Petitioners have attempted to halt a complex, $18.4 billion liquefied natural gas ("LNG") export project that is being developed by Respondent-Intervenors Rio Grande LNG and Rio Bravo Pipeline Company. Three and a half years ago, this Court rejected all but two of Petitioners' challenges to the Federal Energy Regulatory Commission ("FERC") orders authorizing the Project. In *Vecinos Para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1331-32 (D.C. Cir. 2021) ("*Vecinos*"), this Court declined vacatur based on its disruptive consequences, noting that it was "reasonably likely that on remand the Commission

---

[1] Petitioners incorrectly state that Rio Grande did not provide them its position "if any" on the motion. Mot. 1. Petitioners' counsel was advised on the day before the motion was filed that "Rio Grande will oppose any requested stay." *See* Exhibit A.

1

can redress its failure of explanation" "while reaching the same result." This Court denied the petition in all other respects. *Vecinos v. FERC*, No. 20-1045, 2021 WL 3716769 (D.C. Cir. Aug. 3, 2021).

Now back after remand, Petitioners seek the extraordinary remedy of a stay of FERC's authorization pending resolution of this appeal, making no mention of the Court's prior refusal to vacate.[2] Petitioners do so even though project development has advanced by two more years, and construction of this multi-billion dollar Terminal project has been underway for nearly seven months, so the disruptive consequences of a stay would be severe—indeed, far greater than several years ago when the Court declined to vacate the authorizations, based on similar concerns about project disruption. And they do so based on vague and speculative claims of irreparable harm as to matters that have been exhaustively studied by

---

[2] Petitioners ask the Court to "stay the Remand Order and all related FERC authorizations" for the project, while also claiming that their relief is "limited to the pending resolution of this appeal of the Remand Order." Mot. 4. Petitioners do not explain how this Court could stay agency orders (such as the original Authorization Order and unnamed "related" orders) that are not properly before it. In any event, their request is internally inconsistent. Because FERC's original Authorization Order was never vacated, FERC's Remand Order merely amended the Authorization Order. *See* Remand Order, Ordering Paragraphs (A), (E) (noting that all "directives in the Authorization Order remain in effect"). Thus, a stay of the Remand Order pending appeal would not affect the original Authorization Order. Petitioners also did not challenge FERC's Notice to Proceed, which authorizes the activities underlying their present claims of harm, and thus cannot seek relief as to that Notice in this Court either.

federal regulators and resolved by the courts, including allegations that the Project will damage wetlands, cause temporary construction emissions, or affect ocelots, recreation, and tourism.  FERC addressed each of these issues and, as necessary, mitigated or remediated them working in coordination with the Fish and Wildlife Service and other expert agencies—ultimately imposing 144 environmental conditions.

Petitioners ignore the significant and certain harms Rio Grande and Rio Bravo would suffer from a stay of effectiveness of the FERC authorizations, detailed in declarations filed with this opposition.  A stay would also disserve the public interest in the development and export of natural gas resources.  15 U.S.C. § 717(a).

As to the only merits issues left in the case—FERC's explanation on whether its long-standing position on the Social Cost of Carbon should be affected by a Council on Environmental Quality regulation, and the geographic scope of its environmental justice review—FERC undertook a 20-month remand process before issuing two exhaustive orders considering and analyzing each matter in detail.  Petitioners would have preferred a different outcome, but the National Environmental Policy Act ("NEPA") mandates agency process, not outcomes, and Petitioners have shown no likelihood of success on their procedural claims.  Petitioners' motion should be denied.

## ARGUMENT

### I.    Petitioners Are Not Entitled To A Stay

"On a motion for a stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo* v. *U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). A stay may be granted only when the applicant has made (1) "a strong showing that [it] is likely to succeed on the merits," and a showing that (2) it "will be irreparably injured absent a stay," (3) a stay will not "substantially injure the other parties interested in the proceeding," and (4) "the public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

#### A. Petitioners Have Made No Showing Of Likely Success On The Merits

##### 1. FERC's greenhouse gas analysis on remand was reasonable and consistent with this Court's mandate.

Petitioners' four-paragraph argument on greenhouse gases ("GHG"), largely unburdened by citations to authority, does not come *near* a "strong showing" of likely success on their GHG-related arguments. *Nken*, 556 U.S. at 434 (citation omitted). *Vecinos* instructed FERC to address whether 40 C.F.R. § 1502.21(c) required it to use the Social Cost of Carbon tool. 6 F.4th at 1330-31. On remand, FERC did so. It correctly explained why § 1502.21(c) does *not* "require" it to use the Social Cost of Carbon. *Rio Grande LNG, LLC*, 183 FERC ¶ 61,046, PP90-93 (2023) (R. 3011) ("Remand Order"); *see* 185 FERC ¶ 61,080, P59 & n.176 (2023) (R. 3080) ("Rehearing Order"). But there is a simpler reason why Petitioners cannot

4

show a likelihood of merits success:  FERC also *fully evaluated* the Projects' GHG emissions using the Social Cost of Carbon tool—effectively mooting Petitioners' quarrels.  *See* Remand Order PP94-99.

Section 1502.21(c) states that where information about environmental impacts is missing, agencies shall summarize relevant "scientific evidence" and provide an "evaluation" using "theoretical approaches or research methods generally accepted in the scientific community."    40 C.F.R. § 1502.21(c)(3)-(4).    Here, FERC summarized the Social Cost of Carbon methodology and then "evaluat[ed]" the Projects' climate-related "impacts" "based upon" that method.  *Id.*; *see* Remand Order PP 92, 94-99.  Petitioners identify no flaw or gap in FERC's calculation of dollar-denominated figures based on GHG quantities, which is all the Social Cost of Carbon purports to do.    Thus, FERC discharged any conceivable duty under § 1502.21(c).  Petitioners cannot "demonstrate prejudice" from FERC's conclusion that § 1502.21(c) did not *require* it to apply the Social Cost of Carbon here.  *Air Canada v. DOT*, 148 F.3d 1142, 1156-57 (D.C. Cir. 1998).  Petitioners complain that FERC provided these estimates "[f]or informational purposes."  Mot. 8 (quoting Remand Order P94).  But that is all § 1502.21(c), a NEPA regulation, *calls for*— consistent with NEPA's "information[al]" overarching purposes.  *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 768 (2004).

5

Regardless, § 1502.21(c) only applies where the "theoretical approach" in question is "relevant" to the task at hand.  Here, FERC correctly explained why the Social Cost of Carbon—a tool developed for cost-benefit analysis—is uninformative for qualitative, project-level NEPA analysis, articulating rationales this Court has repeatedly affirmed.  *See* Remand Order PP 92-93; Rehearing Order P 59 & n.176 (citing, e.g., *Ctr. for Biological Diversity v. FERC*, 67 F.4th 1176, 1184 (D.C. Cir. 2023)).  FERC acknowledged and responded to Petitioners' suggestion that the Social Cost of Carbon is purportedly "generally accepted in the scientific community," 40 C.F.R. § 1502.21(c)(4), explaining that the tool is neither developed nor suited for project-level NEPA review, whether or not "generally accepted" for other purposes.  Rehearing Order P 59.  Petitioners simply ignore FERC's reasoning, forfeiting any objection.  *See, e.g.*, *United States v. Van Smith*, 530 F.3d 967, 973 (D.C. Cir. 2008) (no new arguments on reply).

Petitioners then complain that FERC "refused" to decide whether the Projects' GHG emissions would be "significant."  Mot. 8.  But that argument falls outside the remand's scope, and FERC rejected it as such.  Rehearing Order P 54 & n.161.  Regardless, Petitioners' only cited authority is 18 C.F.R. § 380.7—a point jurisdictionally forfeited because not raised on rehearing.  *See Birckhead v. FERC*, 925 F.3d 510, 520 (D.C. Cir. 2019) (citing 15 U.S.C. § 717r(b)).  In any event, that regulation merely requires FERC's environmental impact statement ("EIS") to

6

contain a "staff conclusion section" summarizing significant impacts. The EIS here *did* contain such a section summarizing GHG emissions. *See* EIS at 5-22, R.1277. Petitioners cannot raise any other authorities or arguments on "significance" on reply. *Van Smith*, 530 F.3d at 973. Petitioners challenge FERC's (correct) observation that there is no accepted metric for judging whether a particular volume of GHG emissions (in dollars or tons) is "significant" for NEPA purposes. Mot. 9; *cf*. Remand Order P 93. Petitioners wanted FERC to have labeled the GHG emissions "significant" based on subjective fiat, but cite no authority requiring FERC to do so. FERC has explained why such an approach—i.e., looking at a given amount of GHG emissions and deciding that it is "insignificant" or "significant" simply because it seems "small" or "large" in some subjective sense—would be arbitrary and unhelpful. *See* Authorization Rehearing Order PP 100-08, R.1349.

Finally, Petitioners say FERC "failed to explain whether and how greenhouse gases factored into [its] determination that the project was consistent with the public interest." Mot. 8-9. But FERC considered public benefits and environmental effects, including its new analysis on remand, which concluded that FERC was not required to employ the Social Cost of Carbon protocol. FERC explained that it continued to adhere to its prior conclusions that the Rio Grande Terminal "is not inconsistent with the public interest" and the Rio Bravo pipeline "is required by the public convenience and necessity." *See* Remand Order P 208; Rehearing Order

7

PP 50-52.  Particularly in the context of this limited remand, nothing more was required.

### 2. FERC's environmental justice analysis was reasonable and well-explained.

*Vecinos* held that FERC had inadequately explained its use of a two-mile radius when evaluating the Project's impacts on environmental justice communities, and remanded for FERC to either better explain its choice or analyze these impacts using a different radius.  *Vecinos*, 6 F.4th at 1331.  On remand, FERC considered the issue and broadened its analysis by using a 50-km radius—tracking the Project's outermost potential for Terminal air quality impacts.  Petitioners—who previously told this Court a two-mile radius was too small and then told FERC a 12.8-km radius was too small—now argue that a 50-km radius is too big and arbitrary.  Mot. 9-11. Not so.

*First*, Petitioners failed to challenge the 50-km radius on rehearing before FERC.  *See* Petitioners' Request for Rehearing at 29 & n.83, R. 3021 (challenging the smaller 12.8-km "significant impact level" radius, but refraining from further "criticism" on that issue because "FERC ultimately used a wider 50 km radius"). The Court therefore lacks jurisdiction to review the 50-km radius issue and Petitioners cannot succeed on its merits.  15 U.S.C. § 717r(b); *see Food & Water Watch v. FERC*, 28 F.4th 277, 284 (D.C. Cir. 2022).

*Second*, Petitioners are wrong to suggest that FERC's 50-km radius is arbitrarily untethered from actual impacts. FERC chose that radius as a "conservative estimate" of the farthest distance that criteria air pollutants from the Terminal could be said to reach, based on the science underlying EPA's air-permitting program. Remand Order P118 & n. 268 (citing 40 C.F.R. § 51, app. W - Guideline on Air Quality Models). And FERC's focus on this "potentially affected" area was completely consistent with this Court's direction in *Vecinos*, where it rejected the initial two-mile delineation for not including "potentially affected" areas and explicitly noted that "impacts on air quality . . . could occur within 31 miles [i.e., 50 km]." *Id.*, 6 F.4th at 1330; *see also Communities Against Runway Expansion, Inc. v. F.A.A.*, 355 F.3d 678, 689 (D.C. 2004) (affirming agency's delineation of environmental justice area consisting of population that might "conceivably be affected by" project impacts).

*Finally*, FERC did not "understate" impacts on environmental justice communities by using a 50-km radius. Despite Petitioners' unsupported implication, FERC did not simply evaluate the entire 50-km area as a single, uniform unit, without regard to discrete and localized impacts. Instead, FERC conducted a detailed assessment of Project impacts by community-block-group, on a localized, block-by-block basis. Remand Order, at PP102-206, Appendix B; *see also* January 6, 2023 Response to Information Request, App. A, R. 2967 (providing block-group-

9

level air quality concentrations). That analysis enabled FERC to make a refined conclusion that air quality for the nearest environmental justice residences would not be adversely impacted, but those recreating in the wildlife refuge near the Project could experience adverse air impacts. That finding led FERC to go beyond NEPA's procedural requirements and impose substantive monitoring and mitigation conditions. Remand Order, PP139-141, 147-151.

### B. Petitioners Make No Colorable Showing of Irreparable Harm

To show irreparable harm, Petitioners must establish that their alleged injury is "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co.* v. *FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (cleaned up). "The injury must be both certain and great," *id.*, and "beyond remediation," *Chaplaincy of Full Gospel Churches* v. *England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[B]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Reynolds Metals Co.* v. *FERC*, 777 F.2d 760, 763 (D.C. Cir. 1985) (cleaned up, emphasis in original). Petitioners fall far short of this standard. Citing to no precedent for their proposition that allegations like theirs are routinely deemed "irreparable," Petitioners raise a litany of generalized concerns relating to air emissions, harm to ocelots, harm to wetlands, and recreation and tourism. Mot. 12-15. But these alleged

10

injuries are not "certain and great"—a conclusion underscored by Petitioners' own delay in seeking relief.

*First*, as it noted repeatedly in denying a stay, FERC already addressed all of Petitioners' claimed harms through its multi-year environmental review of the Project assessing any significant environmental impacts and requiring mitigation to environmentally acceptable levels. EIS-ES (R. 1277). Thus, as detailed below, each of Petitioners' alleged harms were addressed through that review and—if needed— mitigated to a level far below "certain and great" injuries.

As to temporary air emissions from construction, Mot. 12, FERC determined that the Projects would not result in regionally significant impacts on air quality, given the proposed mitigation measures and adherence to air quality control and monitoring permit requirements. Authorization Order at P104, R. 1314; Remand Order at P151.

Similarly, FERC addressed concerns regarding impacts to wildlife (including the ocelot) and wildlife habitat. Mot. 13-14. FERC engaged the U.S. Fish and Wildlife Service—the agency with relevant statutory authority—in a formal consultation process to address any adverse impacts to the ocelot and its habitat. The U.S. Court of Appeals for the Fifth Circuit then considered and denied a petition for review by Sierra Club challenging the Service's analysis of ocelot impacts. *Sierra Club v. Dep't of the Interior*, 990 F.3d 898 (5th Cir. 2021) (affirming agency

11

conclusion that the Project would not jeopardize the ocelot). The developers have already undertaken significant habitat conservation measures for ocelot and jaguarundi, donating a 1,050-acre tract to a National Wildlife Refuge in December 2020, and planting 24,000 native thorn scrub shrub species as part of the restoration effort. *See* Declaration of Alex Thompson ("Thompson Decl.") ¶ 12(b), Exhibit B. (No ocelots have been sighted in the Project area, but all personnel are trained on their potential presence. *Id.* ¶ 13.) In any event, ocelot impacts "are not imminent," "given the narrow scope of construction authorized in the Notice to Proceed." Mot. Exhibit 1 (Order Denying Stay) at P25.

As to alleged disturbance to the Bahia Grande wetlands, Mot. 13, Rio Grande has, for example, developed a wetlands mitigation program that protects in perpetuity over 3,000 acres in the vicinity of the Rio Grande Project. *See* Thompson Decl. ¶12(a). And here too, Petitioners' claims of harm have been addressed by other agencies whose decisions were affirmed in the courts of appeals. The Army Corps of Engineers issued a Clean Water Act permit to the developers, and the Fifth Circuit has held that the Corps approved the "least environmentally damaging practicable alternative . . . and did not act arbitrarily in its evaluation of pipeline construction impacts and [wetlands] mitigation efforts." *Shrimpers & Fishermen of the RGV v. U.S. Army Corps of Eng'rs*, 56 F.4th 992, 994 (5th Cir. 2023). Similarly, FERC fully considered land-use impacts—including recreation and tourism—and

addressed them in the EIS, the Pipeline Amendment EA, the Authorization Order, and the Remand Order.  Authorization Order at PP92-97; Remand Order at PP122-126; EIS at 5-10 to 5-12 (R. 1277); Pipeline Amendment EA at 18 (R. 2374).  FERC imposed mitigation measures, and concluded that Project land-use and recreation impacts would not be significant.  Authorization Order at P97 (citing EIS 4-198).

To the extent Petitioners assert that Pipeline construction and operation in particular will cause injury—*see* Mot. 14-16, Mancias Decl. ¶¶ 5-7, 9-12; Hinojosa Decl. ¶¶ 7-10, 12; Nuñez Decl. ¶ 11; Hockema Decl. ¶¶ 7-11, 14—that argument also fails.  Pipeline construction is not scheduled to begin until May 2025, with the Pipeline not entering service until August 2026.  Declaration of Megan Behrends ("Behrends Decl") ¶ 16, Exhibit C.  Over the coming 15 months, Rio Bravo will continue working to obtain and finalize permits, complete pipeline design, and procure materials.  *Id*. ¶¶ 14-16.  These pre-construction activities—while essential to Rio Bravo's ability to construct the pipeline and place it into service on time— pose no threat of environmental harms, and Petitioners do not suggest otherwise.[3]

---

[3] This Court will likely decide this petition long before any Pipeline-related construction or operational impacts occur.  That reality forecloses Petitioners' ability to show—as they must—that, absent injunctive relief, they will suffer harms *during pendency of this Court's review*. *See Va. Petroleum Jobbers v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Where FERC has already fully considered the environmental impacts, denying a stay will not put the Petitioners at risk of irreparable harm.

This Court has repeatedly denied motions for stay requests of natural gas infrastructure under similar circumstances. *See, e.g.*, *Sierra Club v. FERC*, Nos. 20-1512, 2021 WL 1044965 (D.C. Cir. Feb. 19, 2021); *Appalachian Voices v. FERC*, Nos. 17-1271, 2019 WL 847199 (D.C. Cir. Feb. 2, 2018); S*ierra Club v. FERC*, 867 F.3d 1357 (D.C. Cir. 2017); *City of Boston v. FERC*, 897 F.3d 241 (D.C. Cir. 2018). Petitioners' failure to show irreparable harm is even more decisive in this case where Petitioners' claims of harm are based on matters that FERC already reviewed and mitigated or remediated in decisions now final and not subject to further challenge.[4]

Moreover, the timing of Petitioners' stay motion "bolster[s]" the conclusion that "an injunction should not issue." *Fund for Animals* v. *Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975).  Petitioners attempt to excuse their delay by stating that "now . . . construction is imminent," Mot. 3, but this misstates the situation.  In July 2023, Rio Grande publicly issued its contractor—Bechtel Energy—a notice to proceed with "full construction of the Rio Grande LNG Project."  *See* July 12, 2023, Rio Grande Update, R. 3035; *see also* Rio Grande Monthly Report No. 44, R. 3046.  That set in motion substantial construction activities, including mobilization of significant

---

[4]  Petitioners' claims of harm are not tied to the two merits issues remaining in the case—the adequacy of FERC's explanations as to greenhouse gas emissions and the environmental justice radius.

equipment, land clearing and grading, setting up temporary facilities, constructing the temporary water barge offloading area, production deep mixing method activities for soil stabilization, and development of onsite construction roads and laydown yards. Monthly Report No. 44; Thompson Decl. ¶ 6. Since then, construction has fully commenced, including installation of concrete test piles, shoreline reclamation, and beginning construction of the perimeter levee—all as authorized by FERC staff. *Id*. ¶ 7.

Construction was foreseeable seven months ago. Nonetheless, Petitioners waited until November 24, 2023 to move FERC for a stay, by which time Rio Grande had already undertaken an extensive and costly effort to kick off the complex process of constructing the terminal. *Id.* ¶ 7(a).

Less-extensive delays have foreclosed claims of imminent harm. *See Fund for Animals*, 530 F.2d at 988 (44 days); *Newdow* v. *Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (approximately one month); *Mylan Pharms., Inc.* v. *Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (two months). The Court should find the same here.

### C. A Stay Would Substantially Harm Rio Grande, Rio Bravo, and Many Others

A stay would cause substantial financial and reputational harm to Rio Grande and Rio Bravo, and would harm many others, including parties who have contracted to purchase LNG from the project, those building it and relying on it for their jobs, and those affected by the environmental and logistical consequences of de- and re-

mobilization.  Petitioners dismiss these real-world harms, asserting that economic harms do not count and that the developers are responsible for the delay.  Mot. 17. Both claims are wrong.

### 1.  Petitioners ignore the significant harms of a stay

Petitioners misstate the law in arguing that "monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business."  Mot. 17 (partially quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Only *Petitioners* must show irreparable harm, as the party seeking relief.  For non-moving parties, the Court considers the full range of "substantial" harms—not just "irreparable" ones.  *See Chaplaincy*, 454 F.3d at 297.  Moreover, Petitioners' quote omits the key first word:  "recoverable" monetary loss.  Petitioners do not—and cannot—explain how the developers or others relying on the Project, could *recover* the substantial losses flowing from a stay; unrecoverable monetary losses are "irreparable."  *See Alabama Association of Realtors v. HHS*, 594 U.S. __, 141 S. Ct. 2485 (2021) (finding that equities favored party irreparably harmed by loss of rent payments "with no guarantee of eventual recovery").

The financial *and* non-financial harms from a stay would be severe:

### a.  *Harms to the project, developers, and customers*

Substantial construction activities have been underway by Rio Grande's contractor for several months, while Rio Bravo continues important development

and pre-construction pipeline activities. Staying the authorization and halting these activities would seriously harm Project development—all while requiring duplicative, counterproductive, and costly activities. Thompson Decl. ¶ 4. For example, Rio Grande would have to continue various environmental and safety activities to maintain its permits, including site stabilization and repairing deficiencies, even if the authorization and construction were stayed. *Id.* ¶¶ 8-9.

Rio Grande's Chief Financial Officer describes the financial consequences as "extremely serious." Declaration of Brent Wahl ("Wahl Decl.") ¶ 4, Exhibit D. FERC's authorization is key to the $18.4 billion in project financing Rio Grande obtained through a series of agreements that obligate it to construct Phase 1 of the Project—the first three trains and related facilities. *Id.* ¶¶ 4-5. A stay could trigger restrictions under the Project Financing Arrangements that would irreparably harm Rio Grande, preventing it from having access to cash to construct Phase 1. *Id.* ¶ 5. A stay would also substantially disrupt Rio Grande's engineering, procurement, and construction agreements with Bechtel—suspension of which would add enormous costs under a contract on which Rio Grande has already paid $1.701 billion through December 31, 2023. *Id.* ¶ 6. Rio Grande's long-term sale and purchase agreements with nine global LNG offtakers do not contain provisions enabling recovery of the significant costs from suspensions and delays. *Id.* ¶¶ 7, 9. These losses would be irreparable and weigh heavily against a stay. *Id.*; *see Dangerfield Island Protective*

*Soc'y* v. *Lujan*, 920 F.2d 32, 38-39 (D.C. Cir. 1990) (commitments of third parties to an already-underway project are relevant in deciding whether to halt it); *Apache Survival Coal.* v. *United States*, 21 F.3d 895, 912-913 (9th Cir. 1994) (same).

A stay would also jeopardize Rio Grande's reputation as a stable and dependable supplier, *id.* ¶ 10, and negatively affect its ability to deliver vitally needed supplies of U.S. LNG to its customers, including European customers who seek to reduce or eliminate dependence on natural gas from Russia and other volatile sources. *Id.* ¶¶ 6-7.

Although pipeline construction is not scheduled to begin until May 2025, even a brief stay of FERC's authorization orders would impose practical and costly burdens on Rio Bravo. For example, without an effective FERC authorization, Rio Bravo may be limited in its ability to complete ongoing design and procurement activities on the required schedule. Behrends Decl. ¶¶ 14-15, 17-19. Without a valid FERC authorization, Rio Bravo may be unable to accept delivery of certain already-contracted-for materials along the pipeline right-of-way—and may be forced to delay delivery or incur expenses to store materials elsewhere or cancel orders outright. *Id.* ¶ 19. Furthermore, a stay could prevent Rio Bravo from accessing land along the right-of-way to complete necessary environmental and other surveys to aid in avoiding or reducing pipeline impacts; some surveys can only occur at certain times of year given seasonal and other restrictions intended to protect species and

resources.  *Id.*  Finally, a prolonged stay would risk Rio Bravo missing its August 2026 in-service date, resulting in deferred or lost revenue.  *Id.* ¶¶ 20-21.

### b. *Harms to relying parties and others*

A stay would harm many other parties. Demobilizing significant onsite equipment upon a stay—and remobilization upon resumption—would increase environmental impacts (e.g., temporary construction emissions).  Thompson Decl. ¶ 11.  Resumption of the project would require re-disturbing previously stabilized areas—including vegetation clearing, double-handling and thus degrading of soil, and increasing the potential of wildlife encounters on a site that has already been cleared without harm to wildlife.  *Id*. ¶10.

Granting a stay would also harm the broader Rio Grande Valley community— a community with one of the country's highest unemployment rates.  Wahl Decl. ¶ 8.  There are currently about 750 people working onsite—73% of whom are hired locally.  *Id.*  Numerous ancillary services are also provided offsite in Cameron County.  *Id.*  A stay would eliminate hundreds of local jobs, harming workers who have ordered their lives around the Project's long-term opportunities.  *Id.*; *see Western Watersheds Project* v. *Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (lost jobs are "properly weighed against" environmental harms); *General Motors Corp.* v. *Harry Brown's, LLC*, 563 F.3d 312, 321 (8th Cir. 2009); (the "public interest in maintaining . . . jobs in the . . . community weigh[s] against an injunction").

19

Petitioners ignore all of these harms in favor of a supposed general proposition that the balance of harms "usually" favors protecting the environment, Mot. 16, but have made no actual showing of that here. Indeed, the case they cite—*Amoco Production Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)—confines their generic proposition to where "such injury is sufficiently likely," and *Gambell declined* an injunction because the claimed injury did not outweigh the substantial investment that private companies would lose if exploration were enjoined. *Id.* at 545; *see also Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 157-158 (2010) (no "thumb on the scale" favoring injunctive relief for NEPA claims; rather, an injunction should issue "only" where movant makes the necessary showing, including of irreparable harm).

### 2. The developers have not caused delay

Petitioners' suggestion that the developers somehow were responsible for FERC's delayed review on remand so that construction has been delayed anyway is baseless. Mot. 17-18. Significant work has been undertaken throughout the remand process, as the authorization was never revoked. *See, e.g.* Thompson Decl. ¶¶ 6-7, 14-16. Moreover, FERC is reviewing the carbon capture proposal in an entirely separate docket, and that review was immaterial to—and has not delayed—construction under the existing authorization. *Id.* ¶ 16.

### D. A Stay Would Harm The Public Interest

Petitioners assert—but make no effort to show—that the public interest favors a stay. FERC conducted an exhaustive environmental review and found construction and operation of the Rio Grande LNG Terminal and the Rio Bravo pipeline to be consistent with the public interest. The Natural Gas Act creates a presumption that approval of the Terminal is in the public interest, as FERC found here. Indeed, Congress directed that applications for LNG export operations be granted *unless* FERC affirmatively concludes that the project is not in the public interest, 15 U.S.C. § 717b(a), and has required expedited review of certain natural-gas-related decisions. *Id.* § 717r(d)(5).

Under this Court's precedent, a NEPA violation cannot support an injunction without "a particularized analysis . . . of any countervailing considerations of public interest." *Natural Res. Def. Council* v. *U.S. Nuclear Regulatory Comm'n*, 606 F.2d 1261, 1272 (D.C. Cir. 1979). And a stay here would harm the public interest— negatively impacting local jobs, increasing environmental disturbance, and undermining a source of natural gas to those around the globe seeking non-Russian sources.

Petitioners discuss a recent Executive Branch pause on natural-gas export approvals to non-Free Trade Agreement countries. Petitioners concede that the "pause does not apply to this facility." Mot. 20. To the contrary, the new Executive

Branch policy relies on the availability of exports from already-approved projects—including Rio Grande—to find that pausing *future* authorizations will not harm overseas allies or energy security.  An indefinite stay of project construction would thus undermine one stated basis for the policy.  Nor does the policy overturn the provision of the Natural Gas Act presuming approval of Rio Grande's terminal to be in the public interest, or overturn FERC's finding that authorization of Rio Bravo's pipeline is in the public interest.

## II.  Respondent-Intervenors Take No Position On The Request For Expedition

Petitioners ask for expedition as to the filing of the Joint Appendix and Final Briefs—but not as to the filing of their own reply brief—and ask the Court to "treat this case as expedited for purposes of setting oral argument."  Mot. 4-5.  Respondent-Intervenors take no position on these requests, which primarily implicate the Court's own schedule.  Respondent-Intervenors do note, however, that this Court rejected a similar motion that had not "articulated 'strongly compelling' reasons justifying expedition."  *Earth Reports, Inc. v. FERC*, No. 15-1127, Document No. 1557312 (D.C. Cir. June 12, 2015) (quoting D.C. Circuit Handbook of Practice and Internal Procedures 33 (2015)).

## <u>CONCLUSION</u>

The motion to stay should be denied.

Respectfully submitted,

<u>/s/ Jeremy C. Marwell (by permission)</u>    <u>/s/ John Longstreth</u>
Jeremy C. Marwell                          John Longstreth
Matthew X. Etchemendy                      Varu Chilakamarri
Vinson & Elkins LLP                        David L. Wochner
2200 Pennsylvania Avenue, NW               K&L Gates LLP
Suite 500 West                             1601 K Street, N.W.
Washington, DC 20037                       Washington, DC  20006
Phone: 202.639.6507                        Phone:  (202) 778-9000
Email: jmarwell@velaw.com                  Fax:     (202) 778-9100
                                           Email:   john.longstreth@klgates.com
*Counsel for Rio Bravo*                    david.wochner@klgates.com
*Pipeline Company, LLC*                    varu.chilakamarri@klgates.com

                                           *Counsel for Rio Grande LNG, LLC*


February 12, 2024

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d) and 32(a) because it contains 5,033 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: February 12, 2024                */s/ John Longstreth*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2024, I electronically filed the foregoing Joint Opposition of Rio Grande LNG, LLC and Rio Bravo Pipeline Company to Motion to Stay and/or Expedite with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I further certify that I have mailed the foregoing document by first-class mail, postage prepaid, to any participants in the case who are not CM/ECF users.

*/s/ John Longstreth*