ORAL ARGUMENT NOT YET SCHEDULED

No. 23-1174 (L), 23-1221

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CITY OF PORT ISABEL, *et al.*,

*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

## PETITIONERS' JOINT REPLY IN SUPPORT OF MOTION TO STAY OR EXPEDITE

Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org

Lisa M. Diaz
Sierra Club
910 Julia Street,
New Orleans, LA 70113
305-336-2258
lisa.diaz@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*

***Additional counsel listed on inside cover.***

Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 544-4218
ghinojosa@ghinojosalaw.net

*Attorney for City of Port Isabel*

Dated Feb. 20, 2024

# TABLE OF CONTENTS

Table of Contents ..................................................................................i

Table of Authorities.............................................................................ii

Glossary ..............................................................................................iv

Introduction.........................................................................................1

Argument.............................................................................................3

   I.   On the Merits, FERC Failed to Respond to the Issues Remanded by *Vecinos* ...........................................................................3

       A.   Greenhouse Gas Emissions ...................................................3

       B.   Environmental Justice.........................................................7

   II.   Respondents Have Not Shown That Petitioners' Injuries Would Not be Irreparable or Do Not Support a Stay ...............................8

   III.  Harm To Intervenors Does Not Outweigh the Other Stay FActors ..............................................................................12

   IV.  Public Interest.........................................................................13

Conclusion ........................................................................................14

Certificate of Compliance .................................................................16

Certificate of Service ........................................................................17

# TABLE OF AUTHORITIES

## Cases

*A. Philip Randolph Inst. v. Husted,*
   907 F.3d 913 (6th Cir. 2018)....................................................................1

*Delaware Riverkeeper Network v. FERC,*
   45 F.4th 104 (D.C. Cir. 2022) ...............................................................4

*League of Women Voters of United States v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016)..................................................................13

*Pennsylvania v. New Jersey,*
   426 U.S. 660 (1976)............................................................................12

*Safari Club Int'l v. Jewell,*
   47 F. Supp. 3d 29 (D.D.C. 2014).........................................................12

*Sierra Club v. FERC* ("*Sabal Trail*")
   867 F.3d 1357 (D.C. Cir. 2017)............................................................13

## Agency Orders

Department of Energy, Rio Grande LNG,
   DOE/FE Order No. 4492 (Feb. 10, 2020) ............................................16

*Fla. Se. Connection,*
   162 FERC ¶ 61,233 (March 14, 2018) ...............................................15

*Interim NEPA Guidance on Consideration of Greenhouse Gases,*
   88 Fed. Reg. 1196 (Jan. 9, 2023) .........................................................4

*Mountain Valley Pipeline,*
   163 FERC ¶ 61,197 (June 15, 2018)................................................5, 6

*Tennessee Gas Pipeline Co.,*
   185 FERC ¶ 61,132 (Nov. 16, 2023). .................................................12

**Rules**

Cir. Rule 18(a)(1) ...................................................................1

Fed. R. App. P. 8(a) ...............................................................1

**Regulations**

18 C.F.R. § 380.7 ...................................................................6

40 C.F.R. § 1502.21 ..........................................................3, 4, 5

# GLOSSARY

| | |
|---|---|
| EIS | Environmental Impact Statement; here, document R.1227 |
| FERC | Federal Energy Regulatory Commission |
| LNG | Liquefied Natural Gas |
| NEPA | National Environmental Policy Act |
| NAAQS | National Ambient Air Quality Standards |
| $\mu g/m^3$ | Micrograms per cubic meter |
| $PM_{2.5}$ | Fine Particulate Matter |
| $PM_{10}$ | Coarse Particulate Matter |
| R.____ | Item ____ in the certified index to the record |
| Rehearing Order | *Order Addressing Arguments etc. re: Rio Grande LNG, LLC, et al.,*185 FERC ¶ 61,080 (Oct. 27, 2023), R.3080 |
| Remand Order | *Order on Remand and Amending Section 7 Certificate re Rio Grande LNG,* 183 FERC ¶ 61,046 (April 21, 2023), R.3011 |

iv

## INTRODUCTION

Absent action from this Court, the pending petitions for review will likely take another year to be decided. In that time, FERC will likely issue additional "notices to proceed," allowing substantial construction to occur and harming petitioners Vecinos para el Bienestar de la Comunidad Costera *et al.* ("Vecinos") and their members.

The question here is whether a stay is warranted based on the four factors identified in *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985), or in the alternative, whether to expedite this case under Cir. Rule 18(a)(1). The Court reviews this motion *de novo*; question is *not* whether FERC acted arbitrarily in denying Vecino's motion for an administrative stay. *See A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 917 (6th Cir. 2018) (motion for stay pending appeal from district court under Fed. R. App. P. 8(a) is reviewed *de novo*). Indeed, on the first and most important of these four factors—likelihood of success on the merits—there is no FERC decision to defer to, because FERC does not consider or balance this factor in deciding whether to impose a stay at the agency level.

The four factors warrant a stay here. Concerning the merits, FERC has failed to respond to the central issues remanded in *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021). FERC contends that the social cost of carbon is not "generally accepted" for use in "project-level" review, but FERC cannot cite even a single other agency or scientific authority that does *not* accept the tool for use in this context. FERC again purported to analyze whether the projects would disproportionately affect environmental justice communities without identifying who would actually be affected.

Petitioners will also be injured absent a stay. FERC argues otherwise because, in FERC's view, there is plenty of other nature elsewhere. This argument cannot defeat a showing of irreparable injury, especially in light of Vecinos' members ties to this particular place. These factors outweigh the prospect of economic harm to the applicants. Finally, the public interest favors a stay here.

## ARGUMENT

## I.  ON THE MERITS, FERC FAILED TO RESPOND TO THE ISSUES REMANDED BY *VECINOS*

### A.  Greenhouse Gas Emissions

In the Remand Order, as in the prior orders challenged in *Vecinos*, FERC argued that it did not have the tools needed to determine whether the terminal and pipelines' greenhouse gas emission were "significant." Remand Order PP93, 207, *Vecinos*, 6 F.4th at 1328. *Vecinos* remanded with instructions to "explain whether 40 C.F.R. § 1502.21 (c)," which governs agency responses to incomplete or unavailable information, "calls for [FERC] to apply the social cost of carbon protocol or some other analytical framework, as 'generally accepted in the scientific community' within the meaning of the regulation, and if not, why not." *Id*. at 1330. In its opposition to Vecinos' stay motion, and in its response brief, FERC offers three flawed arguments for FERC's explicit continued refusal to consider social cost of carbon in FERC's own analysis.

First, although FERC concedes that the scientific community generally accepts social cost of carbon as a method for evaluating the impact of *rules*, FERC mistakenly argues that scientific community does

not accept use of the tool for evaluating individual projects. FERC Opp'n at 11-13. FERC does not provide even a single example of a member of this community or another agency that does *not* accept use of social cost of carbon for project-level review. To the contrary, the Council on Environmental Quality endorses use of social cost of carbon "in most cases," rather than solely for review of rulemakings, *Interim NEPA Guidance on Consideration of Greenhouse Gases*, 88 Fed. Reg. 1196, 1202 (Jan. 9, 2023), and as FERC has recognized, numerous other agencies use the tool for project-level review. *Mountain Valley Pipeline*, 163 FERC ¶ 61,197 P281 n.772 (June 15, 2018). Objectively, the scientific community plainly generally accepts the use of the social cost of carbon for project-level review.[1]

Second, as *Vecinos* already decided, 40 C.F.R. § 1502.21(c) can require FERC to use generally accepted tools "notwithstanding" FERC's criticisms thereof, 6 F.4th at 1329. This general acceptance disposes of

---

[1] FERC argues that *Delaware Riverkeeper Network v. FERC*, 45 F.4th 104, 111 (D.C. Cir. 2022) "up[held] [FERC's] determination that the protocol is not appropriate for project-specific review." FERC Opp'n at 12-13. This case did not discuss any differences between review of rules and review of individual projects. And petitioners there had waived the *Vecinos* argument that is the issue before FERC here.

FERC's criticisms of social cost of carbon here. FERC's concern over "how to apply social cost of carbon on a long-time horizon," Remand Rehearing Order P59 n.176, is merely the same argument about "discount rates" that *Vecinos* rejected. 6 F.4th at 1329. The scientific community has accepted that this concern can be addressed by presenting values with a range of discount rates. *Id.* The scientific community has also accepted social cost of carbon "notwithstanding" FERC's concern that it might be misleading to present social cost of carbon outside the context of a full cost-benefit analysis. The Council on Environmental Quality has stated that the tool is "appropriate and valuable … even if no other costs or benefits are monetized," 88 Fed. Reg. at 1,202, and the other agencies that have used the tool for project level review that FERC acknowledged in *Mountain Valley Pipeline* did not involve full cost-benefit analyses. 163 FERC ¶ 61,197 P281 n.772. If FERC had chosen to analyze the impact of greenhouse gas emissions using some method other than the social cost of carbon, FERC's criticisms of social cost might have justified that choice. But because FERC failed to provide any such alternative analysis, 40 C.F.R. § 1502.21(c) does not allow FERC to refuse to use this tool on the basis of criticisms that the scientific community has rejected.

Third, FERC mistakenly suggests that even if social cost of carbon is generally accepted in the scientific community, that this tool does not enable FERC to determine whether greenhouse gas emissions are significant, or that FERC is not required to do so. For *every* impact other than greenhouse gases, FERC explicitly decided whether the impact was significant or insignificant, as required by 18 C.F.R. § 380.7. Remand Order P207. In doing so, FERC made policy judgments without the benefit of general significance thresholds. For example, FERC concluded that "visual impacts" (i.e., scenery) would be "significant." Remand Order PP161-163. This conclusion represents a policy judgment on FERC's behalf, one made without the benefit of a general significance threshold or specific agency expertise in scenery. And FERC's decision to label impacts as significant or insignificant matters, as demonstrated by FERC's assertion that "insignificant" impacts cannot constitute irreparable injury, Opp'n at 21-22, or that insignificant impacts do not weigh against a finding of consistency with the public interest, as part of Natural Gas Act public interest determinations, Remand Order P207.

### B. Environmental Justice

FERC cannot rationally evaluate whether project impacts will disproportionately fall on environmental justice communities without first determining who will be impacted. *See* Rehearing Request of Vecinos *et al.*, at 5, 29-30 (May 22, 2023) ("FERC fails to identify which census block groups, within a 50 km or 12.8 km radius, are likely to be impacted by the increased emissions from the project.").[2]

FERC's opposition does not claim that its environmental justice analysis reflected the communities that would actually be impacted by air pollution from the projects. Opp'n at 16. The 50-kilometer radius may have been an appropriate scope for modeling *whether* communities within that scope could be impacted, based on FERC's conclusion that no project could have air impacts beyond that scope. But FERC failed to use the results of that model in its environmental justice analysis: that is, to address whether the communities *actually* impacted by this project, rather than communities that could have been impacted by some hypothetical project, were disproportionately low-income or minority.

---

[2] R.3021, attached.

Thus, FERC has not resolved the basic discrepancy identified by
*Vecinos*: the fact that the scope of FERC's environmental justice analysis
did not match FERC's conclusions about who would actually be impacted.
FERC's conclusion that all air impacts would be insignificant, Opp'n at
17, does not resolve the issue either. As FERC recognized in the Remand
Order, impacts can be disproportionate and adverse, and require an
environmental justice analysis, even when the impacts fall below the
threshold of significance. Remand Order P76, P107 n.108.

## II.  PETITIONERS' INJURIES WOULD BE IRREPARABLE AND SUPPORT A STAY

Construction of the Rio Grande terminal and Rio Bravo pipeline
will plainly injure the environment, and Vecinos' enjoyment thereof.

FERC argues that injury arising from air pollution is not imminent
because the *worst* air pollution impacts would not occur until years 4
through 7 of project construction. Opp'n at 20 (citing R.1277, EIS, at 4-

259).[3] In the first two years, construction will emit hundreds and thousands of tons of criteria pollutants. EIS at 4-257. Indeed, year two will have the highest total emission of large particulates ($PM_{10}$), at 1,199.5 tons. *Compare* EIS 4-257 *with* EIS 4-263. The fact that still higher volumes of other pollutants may be emitted in the future does not undermine Vecinos' argument that these early emissions will also constitute an irreparable injury.

The fact that FERC determined that all impacts (other than impacts to visual resources or climate) would be insignificant also does not rebut Vecinos' showing of irreparable injury. For air pollution, FERC estimated that ambient annual $PM_{2.5}$ levels surrounding the project already exceed 9.7 micrograms per cubic meter, and FERC modeled that the projects would increase these levels up to 11.87 micrograms, which FERC explained was below the National Ambient Air Quality Standard in effect at the time of FERC's approval. Remand Order P149.[4] EPA

_____

[3] The EIS's analysis of air pollution has been superseded, but for consistency with FERC's opposition, we use estimates from the EIS here.

[4] Although beyond the scope of this motion, Vecinos' merits brief challenges the adequacy of this modeling.

9

recently lowered the standard for this pollutant down to 9.0 micrograms per cubic meter.[5] EPA's action affirms that Vecinos will be exposed to pollution exceeding that EPA deems harmful.

FERC also argues that air pollution, as well as injuries to visual resources, wetlands, *etc.*, do not justify a stay because individuals can avoid these injuries by recreating somewhere else. Opp'n at 20-21. FERC ignores the fact that Sierra Club member Juan Mancias has particular cultural ties to and responsibilities regarding a tribal site near the terminal. Mancias Decl. ¶5. Other individuals who do not have these specific tribal responsibilities nonetheless have histories of visiting these sites, connections thereto, and plans to do so in the future. Hinojosa Decl. ¶5, ¶¶11-12, Nuñez Decl. ¶7. These individuals' ties to this location also demonstrate why off-site mitigation of impacts to wetlands, *etc.*, cannot redress these members' injuries.

---

[5] EPA, Reconsideration of the NAAQS for PM (notice provided Feb. 5, 2024; awaiting publication), *available at* https://www.epa.gov/system/files/documents/2024-02/pm-naaqs-final-frn-pre-publication.pdf

Finally, respondent-intervenors' process arguments regarding petitioners' injuries fail. Intervenors argue that a stay would not redress any injury because those injuries flow from notices to proceed—which Vecinos have not separately challenged—rather than from the specific orders under review here. Intervenor Opp'n at 2 n.2. FERC itself has confirmed that there is no need to challenge notices to proceed based on flaws in the underlying authorization. *Tennessee Gas Pipeline Co.*, 185 FERC ¶ 61,132, PP14-16 (Nov. 16, 2023).

Intervenors separately argue that Vecinos forfeited claims of injury by failing to seek a stay in July 2023, when Rio Grande made an arrangement with its contractor regarding the start of construction. Intervenor Opp'n at 14-15. Whatever private contracts Rio Grande signed at that time do not change the fact that *FERC*'s authorization was effectively stayed until October 27, 2023, and that neither Rio Grande nor its contractor had been given permission to start construction until that time. Vecinos sought relief from FERC less than one month later, on November 24, 2023.

11

## III.  HARM TO INTERVENORS DOES NOT OUTWEIGH THE OTHER STAY FACTORS

Intervenors argue that a stay would cause them to suffer economic loss. But as Vecinos stated in their motion, much of this harm arises from the intervenors' own conduct. Here, intervenors argue that it would be disruptive to halt plans set in motion in July 2023. Intervenor Opp'n at 14. But at that time, Vecinos had already sought rehearing of FERC's remand order, and Vecinos petitioned this court for review on July 10, 2023. The pending rehearing request acted as an automatic stay of the authorization, and in litigation, FERC extended that stay until October 27, 2023. Respondent-intervenor's decision to set plans in motion at that time, despite the risk that this litigation would disrupt them, undermines their claim of harm. A litigant cannot "be heard to complain about damage inflicted by its own hand." *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 33 (D.D.C. 2014) (quoting *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam)).

Nor does *Vecinos*'s remand without vacatur indicate that harm to the applicants outweighs the other stay factors. The *Vecinos* opening brief did not address remedy. Case 20-1045, Doc. 1862921. At that time,

12

Rio Grande did not have customers or financing, and FERC's actions had suggested that FERC would complete a remand before Rio Grande would be ready to start construction. *Fla. Se. Connection*, 162 FERC ¶ 61,233 (March 14, 2018) (summarizing how, after the opinion was issued in *Sierra Club v. FERC*, 867 F.3d 1357 (D.C. Cir. 2017) ("*Sabal Trail*"), FERC issued a draft supplemental EIS for public comment in one month, and FERC reapproved the project on remand within seven months).

## IV.  PUBLIC INTEREST

The public has an interest in ensuring that FERC responds to this Court's remand in *Vecinos* and complies with federal laws. *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

On the other hand, FERC and intervenors have not shown that a stay would harm the public interest. FERC has not affirmatively concluded that the terminal is in the public interest: instead, FERC simply held that Vecinos had not demonstrated that the project was inconsistent with the public interest. 2023 Rehearing Order P53. Similarly, in approving exports from the Rio Grande facility, the Department of Energy relied on a presumption favoring approval, while

13

refraining from making any judgment as to whether this project would ever find market support, financing, or otherwise proceed. Department of Energy, Rio Grande LNG, DOE/FE Order No. 4492, at 20, 47-48 (Feb. 10, 2020).[6]

Even if Rio Grande would be in the public interest *eventually*, the public does not require it *now*, such that a stay pending conclusion of this litigation would harm the public. As explained in Vecinos' motion, facilities already slated to come online will meet any public need for additional export capacity for the foreseeable future.

## CONCLUSION

For the reasons stated above, Vecinos respectfully request that the Court grant this motion to stay, or in the alternative, that the Court expedite this case.

Dated: February 20, 2024

Respectfully submitted,

---

[6] https://www.energy.gov/sites/prod/files/2020/02/f71/ord4492.pdf.

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*


*/s/ Gilberto Hinojosa*
Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 554-4218
ghinojosa@ghinojosalaw.net
Attorney for City of Port Isabel

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure Rule 27(d) and 32(a), I certify that the foregoing motion complies with:

1. the type-volume limitations established by Rule 27(d)(2)(A), because this motion contains 2,515 words; and

2. the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point) using Microsoft Word (the same program used to calculate the word count).

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org
*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2024, I have served the foregoing Joint Opening Brief for Petitioners, including the Addendum thereto, on all registered counsel through the Court's electronic filing system (ECF).

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*