No. 23-1174 (L), 23-1221

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CITY OF PORT ISABEL, *et al.*,

*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

_____

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

_____

## PETITIONERS' JOINT OPPOSITION TO MOTION TO EXTEND TIME TO PETITION FOR REHEARING

Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Rebecca McCreary
Sierra Club
1650 38th St. Ste. 103W
Boulder, CO 80301
303-449-5595 ext. 103
rebecca.mccreary@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*

***Additional counsel listed on inside cover.***

Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 544-4218
ghinojosa@ghinojosalaw.net

*Attorney for City of Port Isabel*

Dated August 28, 2024

Petitioners City of Port Isabel, the Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera oppose intervenor Rio Grande LNG's and intervenor Rio Bravo's motions to extend the time for seeking rehearing and rehearing en banc. A delay would harm petitioners, as Rio Grande is currently engaged in project construction, and has indicated that it will continue to do so until the mandate is issued. Moreover, a delay is unnecessary: neither Rio Grande's decision to retain different counsel nor Rio Grande's request to withdraw its carbon capture and sequestration application justify an extension.

Rio Grande has continued construction pending issuance of the mandate, and announced its intention to continue doing so.[1] Ongoing construction damages the project site and emits air pollution, including hundreds of tons per year of particulates, that impacts surrounding

---

[1] *See* "NextDecade Comments on Today's Court Actions," (Aug. 6, 2024), https://investors.next-decade.com/news-releases/news-release-details/nextdecade-comments-todays-court-actions (attached); Rio Grande LNG, Monthly Status Report No. 57 for July 2024 re the Rio Grande LNG Project under CP16-454 (Aug. 15, 2025), https://elibrary.ferc.gov/eLibrary/filedownload?fileid=6E85D9A8-3787-CD54-9E35-915600D00000 (attached).

communities (*see* R.1277, Final EIS, at 4-256 & 4-257, excerpt attached). Construction also puts a thumb on the scale for FERC's decisionmaking on remand. On remand, FERC must have the ability to conclude that the projects' impacts on surrounding communities, including environmental justice communities, warrant denial of the project. Less drastically, FERC may conclude that modifications to the project are appropriate, including measures to implement carbon capture and sequestration or to reduce emissions of non-greenhouse-gas pollutants. FERC may be less likely to make these changes if they would require undoing work that has already been done. On the other hand, if construction work must be undone or redone, the harms associated with that initial work will have been unnecessary and unjustified. Thus, delaying issuance of the mandate, and allowing construction to continue in the interim, harms Petitioners.

In addition, Intervenors have not shown that a delay would provide meaningful benefits. Rio Grande's decision to hire additional counsel, Rio Grande Motion ¶ 3, does not justify a delay. Rio Grande was already represented by three attorneys, as identified in their response brief (Doc. 2040047), who have extensive experience with FERC litigation in this

circuit. Rio Grande does not argue that its prior counsel became unavailable or incapable of continuing to handle this matter. Rio Grande's decision to change horses mid-stream is purely voluntary, as was Rio Grande's decision to select new counsel with prior commitments during the rehearing period. Rio Grande can make that choice, but not at the expense of harm to prevailing parties.

Nor is delay justified by Rio Grande's decision to withdraw its carbon capture and sequestration proposal, Rio Grande Motion ¶ 5. This voluntary action on Rio Grande's part does not justify delaying proceedings or prolonging harm to Petitioners. This occurrence was also explicitly contemplated by the Court's opinion. *See City of Port Isabel v. FERC*, Slip Op. 23, 2024 WL 3659344 *12 (D.C. Cir. Aug. 6, 2024). Rio Grande's post-decisional actions may affect the contours of FERC's analysis on remand, but they do not undermine the basis of this Court's opinion, or impede Rio Grande's ability to seek rehearing of that opinion.

This Court has already withheld issuance of the mandate to allow respondents 45 days to seek rehearing. That amount of time is more than adequate for respondents to file a petition for rehearing, and the Court should deny the requests for an extension.

Dated: August 28, 2024

Respectfully submitted,

/s/ Nathan Matthews
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Rebecca McCreary
Sierra Club
1650 38th St. Ste. 103W
Boulder, CO 80301
303-449-5595 ext. 103
rebecca.mccreary@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*

/s/ Gilberto Hinojosa
Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520

4

(956) 554-4218
ghinojosa@ghinojosalaw.net
Attorney for City of Port Isabel

**Federal Energy Regulatory Commission**
Office of Energy Projects
Washington, DC 20426

# Rio Grande LNG Project
## *Final Environmental Impact Statement*
## *Volume I*



**Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC**

**April 2019**
**Docket Nos. CP16-454-000, CP16-455-000**
**FERC/EIS-0287F**

**Cooperating Agencies:**

    

U.S. Environmental Protection Agency · U.S. Department of Transportation · U.S. Coast Guard · U.S. Department of Energy · U.S. Army Corps of Engineers

   

U.S. Fish and Wildlife Service · Federal Aviation Administration · National Park Service · National Oceanic Atmospheric Administration - National Marine Fisheries Service

workers.  In addition, particulate emissions would result from fugitive dust generated by construction-related activities, the quantity of which would depend on several factors, including:

- the size of area disturbed;

- the nature and intensity of construction activity;

- surface properties (such as the silt and moisture content of the soil);

- the wind speed; and

- the speed, weight, and volume of vehicular traffic.

The Project would result in emissions from operation of the LNG Terminal, compressor stations, and booster stations, as well as fugitive emissions from pipe flanges, valves, and valve stems.  Emissions estimates for each facility are included below.

**LNG Terminal**

<u>Construction</u>

Construction of the LNG Terminal would be continuous over a 78-month period, beginning upon receipt of all applicable permits.  The first LNG train is expected to be completed by Year 4, with construction of the final LNG train expected to be complete in Year 7.  In addition, emissions from worker commutes associated with commissioning the Project would occur in Year 8.  Construction of Compressor Station 3 would also begin the first quarter of Year 3, with additional compression installed periodically through Year 7, as subsequent LNG trains are brought online.  The construction emissions estimate includes emissions from operation of construction equipment, operation of the onsite concrete batch plants, deliveries of supplies, worker commutes, and land disturbance.  Annual emissions estimates for activities associated with construction of the LNG Terminal and Compressor Station 3 are summarized in table 4.11.1-4.  To estimate construction emissions, RG LNG developed an inventory of non-road equipment, vessels, on-road vehicles, off-road vehicles, and expected activity levels (either hours of operation or miles traveled) that would be used during construction at the LNG Terminal site.  The level of activity for each piece of construction equipment was combined with the relevant emission factors to determine estimates of annual construction emissions.

Two concrete batch plants would be established at the site, mixing a total of about 200,000 tons of cement, 400,000 tons of sand, and 600,000 tons of aggregate to produce concrete for construction of the LNG Terminal.  Onsite batching facilities would implement fugitive dust suppression equipment and filters as required by the TCEQ.

| Table 4.11.1-4<br>Estimated Construction Emissions for the Rio Grande LNG Terminal and Compressor Station 3 (tpy)[a,b] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Facility and Year | NO$_x$ | CO | SO$_2$ | PM$_{10}$ | PM$_{2.5}$ | VOC | Total HAPs | CO$_2$e |
| **Rio Grande LNG Terminal** | | | | | | | | |
| Year 1 | 12.0 | 18.6 | 2.0 | 589.4 | 60.0 | 0.7 | 0.2 | 653.8 |
| Year 2 | 69.7 | 111.4 | 11.8 | 1,199.5 | 125.8 | 4.2 | 1.2 | 9,711.0 |
| Year 3 | 127.8 | 174.3 | 23.5 | 1,146.6 | 125.8 | 6.4 | 1.7 | 15,835.2 |
| Year 4 | 59.3 | 118.5 | 10.6 | 91.4 | 14.2 | 3.6 | 1.0 | 9,046.0 |
| Year 5 | 45.0 | 106.7 | 8.0 | 56.1 | 9.2 | 2.9 | 0.8 | 7,532.0 |
| Year 6 | 39.0 | 70.2 | 7.1 | 26.9 | 5.8 | 2.1 | 0.5 | 6,310.0 |
| Year 7 | 1.2 | 10.4 | 0.0 | 13.9 | 1.4 | 0.1 | <0.1 | 1,054.0 |
| Year 8 | <0.1 | <0.1 | <0.1 | <0.1 | <0.1 | <0.1 | <0.1 | 13.8 |
| **Compressor Station 3** | | | | | | | | |
| Year 3 | 1.3 | 10.3 | <0.1 | 10.6 | 1.1 | 0.3 | <0.1 | 1,371.5 |
| Year 4 | 0.1 | 0.7 | <0.1 | 0.7 | <0.1 | <0.1 | <0.1 | 114.8 |
| Year 5 | 0.7 | 6.5 | <0.1 | 0.2 | <0.1 | <0.1 | <0.1 | 933.9 |
| Year 6 | 0.7 | 5.8 | <0.1 | 0.4 | <0.1 | <0.1 | <0.1 | 831.5 |
| Year 7 | 0.4 | 4.4 | <0.1 | 0.5 | <0.1 | <0.1 | <0.1 | 642.8 |

[a]    Emission estimates include construction emissions from on- and off-road vehicle activity, truck deliveries, vessel activity, worker commutes, and fugitive dust. HAPs were not estimated by RG LNG for vessel activity; however, they were estimated using emission factors for commercial marine vessels identified by the EPA in the 2014 National Emissions Inventory.

[b]    Additional fill material may be obtained from the Port Isabel dredge pile for the Project; RG LNG is currently conducting an analysis of the barge transport alternative for feasibility of use (see section 3.4). If used, RG LNG would obtain the fill via barge. RG LNG estimated annual fugitive emissions from use of the temporary haul road originally proposed for use on the Project; because the haul road is no longer part of the Project, but the transport of material by barge may not be required, we have included use of the haul road as a conservative estimate for annual fugitive construction emissions.

Construction materials would be delivered to the site by barge and by truck. Tugboats would be used for barge deliveries of construction material and equipment. RG LNG estimates that 878 marine deliveries would occur over a 5-year period during construction. Emissions associated with transportation of construction material would be expected to continue until Year 7. Other vessel emissions during LNG Terminal construction would result from dredging of the marine facilities and surveys to map underwater topography.

Fugitive dust emissions would be generated throughout the construction period and are included in the annual emissions estimates. Fugitive dust emissions would include contributions from general site construction work (acreage impacted), earth-moving fugitive dust emissions (quantity of soil moved), and unpaved road travel (distance of travel and weight of vehicles). Fugitive dust would be produced primarily during the site preparation activities, when the site would be cleared of debris, leveled, and graded, including at proposed offsite facilities.

# NextDecade Comments on Today's Court Actions

HOUSTON--(BUSINESS WIRE)--Aug. 6, 2024-- Today, the U.S. Court of Appeals for the D.C. Circuit (Court) issued an order vacating the Federal Energy Regulatory Commission's (FERC) remand authorization of NextDecade Corporation's (NextDecade) (Nasdaq: NEXT) Rio Grande LNG Facility on the grounds that the FERC should have issued a supplemental Environmental Impact Statement (EIS) during its remand process.

NextDecade is disappointed in the Court's decision and disagrees with its conclusions. The Company is reviewing the Court's decision and assessing all of its options. At this time, construction continues on the first three liquefaction trains and related infrastructure (Phase 1) at the Rio Grande LNG Facility, and the Company is evaluating the impact of the Court's decision on the timing of a positive final investment decision (FID) on Train 4.

## About NextDecade Corporation

NextDecade Corporation is an energy company accelerating the path to a net-zero future. Leading innovation in more sustainable LNG and carbon capture solutions, NextDecade is committed to providing the world access to cleaner energy. Through our subsidiaries Rio Grande LNG and NEXT Carbon Solutions, we are developing a 27 MTPA LNG export facility in South Texas along with one of the largest carbon capture and storage projects in North America. We are also working with third-party customers around the world to deploy our proprietary processes to lower the cost of carbon capture and storage and reduce $CO_2$ emissions at their industrial-scale facilities. NextDecade's common stock is listed on the Nasdaq Stock Market under the symbol "NEXT." NextDecade is headquartered in Houston, Texas.

For more information, please visit www.next-decade.com.

## Forward-Looking Statements

This press release contains forward-looking statements within the meaning of U.S. federal securities laws. The words "anticipate," "contemplate," "estimate," "expect," "project," "plan," "intend," "believe," "may," "might," "will," "would," "could," "should," "can have," "likely," "continue," "design," "assume," "budget," "guidance," "forecast," and "target," and other words and terms of similar expressions are intended to identify forward-looking statements, and these statements may relate to the business of NextDecade and its subsidiaries. These statements have been based on assumptions and analysis made by NextDecade in light of current expectations, perceptions of historical trends, current conditions and projections about future events and trends and involve a number of known and unknown risks, which may cause actual results to differ materially from expectations expressed or implied in the forward-looking statements. Although NextDecade believes that the expectations reflected in these forward-looking statements are reasonable, it can give no assurance that the expectations will prove to be correct. NextDecade's actual results could differ materially from those anticipated in these forward-looking statements as a result of a variety of factors, including those discussed in NextDecade's periodic reports that are filed with and available from the Securities and Exchange Commission. Additionally, any development of subsequent trains at the Rio Grande LNG Facility or CCS projects remains contingent upon receipt of requisite governmental approvals, execution of definitive commercial and financing agreements, securing all financing commitments and potential tax incentives, achieving other customary conditions and making a final investment decision to proceed. The forward-looking statements in this press release speak as of the date of this release. NextDecade may from time to time voluntarily update its prior forward-looking statements, however,

it disclaims any commitment to do so except as required by securities laws.


View source version on businesswire.com:

https://www.businesswire.com/news/home/20240806057956/en/

**Investors**

Megan Light

mlight@next-decade.com

832-981-6583

**Media**

Susan Richardson

srichardson@next-decade.com

832-413-6400

Source: NextDecade Corporation



August 15, 2024

1000 Louisiana Street, Suite 3300
Houston, Texas 77002
+1 713-574-1880
www.next-decade.com

Debbie-Anne Reese, Acting Secretary
Federal Energy Regulatory Commission
888 First Street, NE
Washington, D.C. 20426

**Re:     Rio Grande LNG, LLC**
        **Monthly Status Report No. 57**
        **Docket No. CP16-454-000**

Dear Ms. Reese:

Enclosed for electronic filing in the above-captioned docket is Rio Grande LNG, LLC's ("Rio Grande") Monthly Status Report for the period ending July 31, 2024, submitted in compliance with the Federal Energy Regulatory Commission's ("Commission") November 22, 2019 Order Granting Authorizations Under Sections 3 and 7 of The Natural Gas Act (Condition No. 9).[1]

Certain information included in this filing is considered commercially-sensitive, business confidential information. Pursuant to Rule 388.112 of the Commission's regulations, Rio Grande requests confidential treatment for these materials, which have been marked "CUI//PRIV— PRIVILEGED AND CONFIDENTIAL INFORMATION—DO NOT RELEASE."[2]  Questions regarding this request for privileged and confidential treatment should be directed to the undersigned.

Should you have any questions about the instant filing, please feel free to contact the undersigned at (713) 574-1880.

Thank you,

*/s/ Montana Patin*
Montana Patin
Rio Grande LNG, LLC

cc:     Kenneth Warn, FERC
        Dakoriye Charles, FERC
        Steven Kusy, FERC
        Ilker Telci, FERC
        Lisa Tonery, Orrick, Herrington & Sutcliffe, LLP

Enclosures

---

[1]  *Rio Grande LNG, LLC & Rio Bravo Pipeline Company, LLC*, 169 FERC ¶ 61,131 (2019), *modified*, *Rio Grande LNG, LLC & Rio Bravo Pipeline Company, LLC*, 183 FERC ¶ 61,046 (2023).

[2]  18 C.F.R. § 388.112 (2023).



**RIO GRANDE LNG PROJECT**

**DOCKET NO. CP16-454-000**

**MONTHLY STATUS REPORT NO. 57**

**PERIOD: JULY 2024**



Docket No. CP16-454-000
Monthly Status Report No. 57

# Table of Contents

1.0    **INTRODUCTION** ............................................................................................................ 3

2.0    **PROJECT** ....................................................................................................................... 3

2.1 **Status of Permits for Rio Grande LNG Project** ........................................................ 3

2.2 **Construction Activity Status** ....................................................................................... 3

2.2.1 **Current Activities** ...................................................................................................... 3

2.2.2 **Planned Activities** ..................................................................................................... 4

2.3 **Listing of Problems Encountered and Non-Compliance Activity** ........................... 4

2.4 **Corrective Actions Implemented** ................................................................................ 4

2.5 **Effectiveness of Implemented Corrective Actions** .................................................... 4

2.6 **Landowner Issues** ........................................................................................................ 4

2.7 **Agency Communications** ............................................................................................. 4

2.8 **Progress Pictures** ......................................................................................................... 5



Docket No. CP16-454-000
Monthly Status Report No. 57

## 1.0 INTRODUCTION

Pursuant to the Order Granting Authorizations Under Section 3(a) of the Natural Gas Act dated November 22, 2019 ("Order"), the Federal Energy Regulatory Commission (the "Commission" or the "FERC") authorized Rio Grande LNG, LLC ("Rio Grande") to site, construct and operate the proposed liquefied natural gas ("LNG") export terminal (the "Rio Grande LNG Project" or the "Project").

In accordance with the Commission's Order, Environmental Condition No. 9, Rio Grande hereby submits this Monthly Status Report for July 2024.

## 2.0 PROJECT

### 2.1 Status of Permits for Rio Grande LNG Project

Rio Grande has obtained all applicable federal, state, and local permits required for the Project and filed an updated permit table with the FERC on February 25, 2020. Rio Grande is in compliance with issued permits and authorizations.

On July 12, 2024, Rio Grande filed a reauthorization request for the Incidental Harassment Authorization with the National Marine Fisheries Service.

### 2.2 Construction Activity Status

### 2.2.1 Current Activities

The Project completed placement of the mud mat for LNG Tank 1 and concrete placement for the four breasting dolphin pile caps in Jetty 1. The Project commenced placement of pre-cast LNG trenches in Train 1, the general area excavation of Train 2 Cryo Rack, mud mat and rebar placement for LNG Tank 2 foundation, and mooring dolphin monopile driving for Jetty 2.

Ongoing construction activities during the reporting period include breasting dolphin construction at Jetty 1 and 2, underground firewater piping installation and testing, site civil activities such as concrete foundation work, construction of the Material Offloading Facility, and structural steel in Train 1. Simultaneously, work continues for soil stabilization via Deep Mixing Method ("DMM") within Train 2 area, production pile-driving, improvement of onsite laydown areas and work pads to support construction, arrangement of temporary facilities, utilities, and structures. Construction of the facility perimeter levee continues to progress in multiple areas of the site, as well as improvements in temporary drainage and onsite construction roads.

The contractor continued mobilization and site preparation activities at the Port of Brownsville offsite parking and storage area ("OPSA") during the reporting period. An environmental crew continued installing silt fence perimeter control during grubbing and grading activities following bird surveys and hazing activities.

The Project maintains continuous monitoring and maintenance of existing erosion control devices, where accessible. The cattle fence (three string barbed wire) installation is ongoing.



Docket No. CP16-454-000
Monthly Status Report No. 57

No Texas tortoises or federally listed wildlife observations occurred during this reporting period.

### 2.2.2 Planned Activities

In August 2024, Rio Grande will continue the ongoing work and anticipates completion of Train 2 DMM and the permanent driveways associated with the non-jurisdictional State Highway 48 modifications. The Project plans to commence initial placement of concrete for LNG Tank 1 ring foundation.

### 2.3 Listing of Problems Encountered and Non-Compliance Activity

During the reporting period, a non-compliance was issued for land disturbing activities beyond the approved limits of disturbance ("LOD") at the Port of Brownsville OPSA. During site preparation activities for the installation of perimeter control silt fence, the Environmental Inspector observed a disturbed area approximately 600 feet in length and variable in width ranging from one (1) to 20 feet beyond the LOD. No resources were impacted and no trees were cleared.

### 2.4 Corrective Actions Implemented

An environmental stand-down was held immediately following identification of the non-compliance issue discussed in Section 2.3. Crews walked the staked LOD and were retrained on effectively communicating with spotters when making an initial pass with equipment along the project perimeter. The affected area was restored and stabilized with straw mulch. A silt fence was installed along the perimeter as planned and serves as an additional physical boundary.

### 2.5 Effectiveness of Implemented Corrective Actions

The corrective actions were effective.

### 2.6 Landowner Issues

The landowner was notified following the non-compliance issue and had no concerns. In addition, no landowner complaints were reported during the reporting period.

### 2.7 Agency Communications

On July 23, 2024, FERC performed an engineering construction inspection on the Project. No deficiencies or non-compliances were noted.



RIO GRANDE LNG

Docket No. CP16-454-000
Monthly Status Report No. 57

**2.8 Progress Pictures**



LNG Tank 2 mud mat placement



Monopile driving at Jetty 2



Inside Battery Limits Spill Trench in Train 1



Train 1 civil work

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure Rule 27(d) and 32(a), I certify that the foregoing opposition complies with:

1. the type-volume limitations established by Rule 27(d)(2)(A), because this opposition contains 574 words; and

2. the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point) using Microsoft Word (the same program used to calculate the word count).

/s/ Nathan Matthews
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org
*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*

6

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2024, I have served the foregoing Petitioners' Joint Opposition to Motion to Extend Time on all registered counsel through the Court's electronic filing system (ECF).

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*