**[DECIDED AUGUST 6, 2024]**

No. 23-1174 (L), 23-1221

*and*

No. 23-1175 (L), 23-1222

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

CITY OF PORT ISABEL, *et al.*,

*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

_____

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

_____

**PETITIONERS' JOINT RESPONSE IN OPPOSITION TO RIO GRANDE LNG, RIO BRAVO PIPELINE COMPANY, AND TEXAS LNG REQUESTS FOR REHEARING OR REHEARING *EN BANC***

Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Rebecca McCreary
Staff Attorney
1650 38th Street, Suite 103W
Boulder, CO 80301
(303) 449-5595 ext. 103
rebecca.mccreary@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*

**Additional counsel listed on inside cover.**

Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 544-4218
ghinojosa@ghinojosalaw.net

*Attorney for City of Port Isabel*

Dated December 9, 2024

# RULE 26.1 DISCLOSURE STATEMENTS

**City of Port Isabel**

No Rule 26.1 Corporate Disclosure Statement is required for Petitioner City of Port Isabel, a governmental entity.

**The Carrizo Comecrudo Tribe of Texas**

The Carrizo Comecrudo Tribe of Texas has no parent companies, and there are no publicly held companies that have a 10 percent or greater ownership interest in the Carrizo Comecrudo Tribe of Texas.

The Carrizo Comecrudo Tribe of Texas, a corporation organized and existing under the laws of the State of Texas, is a nonprofit organization dedicated to maintaining, preserving, and protecting the tribal identity of the Carrizo Comecrudo Tribe of Texas.

**Sierra Club**

Sierra Club has no parent companies, and there are no publicly held companies that have a 10 percent or greater ownership in it. Sierra Club is a nonprofit corporation organized and existing under the laws of the

State of California, dedicated to the protection and enjoyment of the environment.

## Vecinos para el Bienestar de la Comunidad Costera

Vecinos para el Bienestar de la Comunidad Costera ("Vecinos") has no parent companies, and there are no parent companies that have a 10 percent or greater ownership interest in Vecinos.

Vecinos, an association organized and existing under the laws of the State of Texas, is an unincorporated nonprofit association dedicated to protecting and improving the health, standard of living, and economic development of the coastal community in the Rio Grande Valley of South Texas.

i

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statements ................................................. 1

Table of Contents ................................................................... ii

Table of Authorities ................................................................ iv

Glossary .............................................................................. viii

Introduction .......................................................................... 1

Reasons to Deny the Petition ..................................................... 1

I.   *Marin Audubon* Is Not Pertinent ...................................... 1

II.  Rio Grande's Arguments That FERC Lacked Obligation or
     Authority to Consider Environmental Justice Have Been
     Waived, And Alternatively DoES Not Identify Any Issue
     Warranting Rehearing .................................................... 2

     A.   Rio Grande's Conduct in *Vecinos*, FERC Proceedings, and
          This Litigation Bars Its New Environmental Justice
          Arguments ............................................................... 3

     B.   Rio Grande Has Not Identified Any Precedent Conflicting
          With The Panel's Holding That FERC Could Choose to
          Consider Environmental Justice ................................... 5

III. The Panel Reasonably Found That The Facts Here Triggered an
     Obligation to Supplement The EIS ..................................... 7

IV.  Harmless Error ............................................................ 10

V.   Air Quality Data .......................................................... 12

VI.  Remedy ..................................................................... 13

     A.   Whether FERC Could Justify Its Action ........................ 13

     B.   Disruptive Consequences ........................................... 18

VII. Vacatur Did Not Reinstate FERC's 2019 Authorization ........... 20

ii

Conclusion ...................................................................................22

Certificate of Compliance ...........................................................24

Certificate of Service .................................................................25

# TABLE OF AUTHORITIES

## Cases

*Allied-Signal v. Nuclear Regul. Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ............................................ 13, 15, 18, 19

*Am. Pub. Gas Ass'n v. Dep't of Energy,*
    72 F.4th 1324 (D.C. Cir. 2023) ..................................................... 14, 21

*Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs,*
    781 F.3d 1271 (11th Cir. 2015) ............................................................ 15

*Cent. Me. Power Co. v. FERC,*
    252 F.3d 34 (1st Cir. 2001) ................................................................. 15

*Center for Food Safety v. Regan,*
    56 F.4th 648 (9th Cir. 2022) ......................................................... 16, 17

*City of Holyoke Gas & Elec. Dep't v. FERC,*
    954 F.2d 740 (D.C. Cir. 1992) ............................................................... 4

*City of Oberlin v. FERC,*
    937 F.3d 599 (D.C. Cir. 2019) ............................................................ 15

*Cmtys Against Runway Expansion, Inc. v. FAA,*
    355 F.3d 678 (D.C. Cir. 2004) ............................................................... 9

*Comcast Corp. v. FCC,*
    579 F.3d 1 (D.C. Cir. 2009) .......................................................... 19, 21

*Easley v. Reuss,*
    532 F.3d 592 (7th Cir. 2008) ................................................................ 4

*Env't Def. Fund v. FERC,*
    2 F.4th 953 (D.C. Cir. 2021) .............................................................. 18

*Food and Water Watch v. FERC,*
  28 F.4th 277 (D.C. Cir. 2022) ..................................................... 14, 15

*Friends of the River v. FERC,*
  720 F.2d 93 (D.C. Cir. 1983) ...................................................... 11, 12

*Healthy Gulf v. FERC,*
  107 F.4th 1033 (D.C. Cir. 2024) ............................................... 9, 14, 16

*Marin Audubon Society v. FAA,*
  Dkt. No. 23-1067 (D.C. Cir. Nov. 12, 2024) ............................................. 1

*Marsh v. Or. Nat. Res. Council,*
  490 U.S. 360 (1989) ................................................................ 2, 9

*Metropolitan Edison Co. v. People Against Nuclear Energy,*
  460 U.S. 766 (1983) ................................................................. 6, 7

*Nat. Res. Def. Council v. EPA,*
  808 F.3d 556 (2d Cir. 2015) ......................................................... 15

*Nat'l Ass'n of Home Builders v. EPA,*
  786 F.3d 34 (D.C. Cir. 2015) ......................................................... 4

*North Carolina v. EPA,*
  550 F.3d 1176 (D.C. Cir. 2008) ...................................................... 19

*Oglala Sioux Tribe v. U.S. Nuclear Regulatory Commission,*
  896 F.3d 520, 538 (D.C. Cir. 2018)) ................................................. 17

*Robertson v. Methow Valley Citizens Council,*
  490 U.S. 332 (1989) ................................................................. 11

*SEC v. Chenery Corp.,*
  332 U.S. 194 (1947) .................................................................. 9

*Sierra Club v. EPA,*
  60 F.4th 1008 (6th Cir. 2023) ....................................................... 15

v

*Sierra Club v. FERC*,
  867 F.3d 1357 (D.C. Cir. 2017) ("*Sabal Trail*") ................................ 6, 18

*Stand Up for Cal.! v. Dep't of the Interior*,
  994 F.3d 616 (D.C. Cir. 2021) ......................................................... 8, 11

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  985 F.3d 1032 (D.C. Cir. 2021) .............................. 13, 14, 15, 16, 17, 18

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  Order Denying Pet. for Reh'g En Banc, Case 20-5197, Doc. 1895703
  (Apr. 23, 2021) ................................................................................ 14

*Sugar Cane Growers Co-op v. Veneman*,
  289 F.3d 89 (D.C. Cir. 2002) ....................................................... 13, 14

*Synovus Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.*,
  952 F.2d 426 (D.C. Cir. 1991) ............................................................. 5

*Texas Association of Manufacturers v. Consumer Products Safety Commission*,
  989 F.3d 368 (5th Cir. 2021) .............................................................. 17

*Town of Weymouth v. Mass. Dep't of Envtl. Prot.*,
  973 F.3d 143 (1st Cir. 2020) .............................................................. 20

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
  6 F.4th 1321 (D.C. Cir. 2021) ...................................... 3, 4, 6, 11, 12, 20

*W. Watersheds Project v. Haaland*,
  69 F.4th 689 (10th Cir. 2023) ............................................................ 15

**Statutes**

15 U.S.C. § 717r................................................................................. 21

28 U.S.C. § 2342 ............................................................................... 21

28 U.S.C. § 2344 ............................................................................... 21

42 U.S.C. § 4332 ................................................................................2

42 U.S.C. § 6306 ..............................................................................21

47 U.S.C. § 402 ................................................................................21

## Regulations

18 C.F.R. § 380.1 ...............................................................................2

## FERC Decisions

Fed. R. App. P. 28............................................................................4

Fed. R. App. P. 40............................................................................1

## Federal Register Notices

*Florida Southeast Connection,*
    162 FERC ¶ 61,233 (Mar. 14, 2018)...................................20

*Venture Global CP2 LNG,*
    187 FERC ¶ 61,199 (Jun. 27, 2024) ...................................16

## Other Authorities

*Am. Pub. Gas Ass'n v. Dep't of Energy,*
    Petition for Review, Case 22-1107, Doc. 1950741 (June 14, 2022) .....21

*Federal Actions To Address Environmental Justice,*
    Executive Order 12,898, 59 Fed. Reg. 7,629 (Feb. 11, 1994)................6

FERC, *Regulations Implementing NEPA,*
    52 Fed. Reg. 47,897 (Dec. 17, 1987) ...................................2

# GLOSSARY

| | |
|---|---|
| EIS | Environmental Impact Statement |
| FERC | Federal Energy Regulatory Commission |
| LNG | Liquefied Natural Gas |
| NEPA | National Environmental Policy Act |
| Op. | Opinion (D.C. Cir. Aug. 6, 2024) (Doc #2068430) |
| RB_Pet. | Petition for Rehearing filed by intervenor Rio Bravo, in case 23-1174 |
| RGJA | Joint Appendix from *City of Port Isabel v. FERC*, Nos. 23-1174, *et al.* (Doc. #2045210) |
| RG_Pet. | Petition for Rehearing filed by intervenor Rio Grande LNG, in case 23-1174 |
| SEIS | Supplemental Environmental Impact Statement |
| Texas LNG | Texas LNG Brownsville LLC |
| TX_Pet. | Petition for Rehearing filed by intervenor Texas LNG, in case 23-1175. |
| TXJA | Joint Appendix from *City of Port Isabel v. FERC*, Nos. 23-1175, *et al.* (Doc. #2044251) |

## INTRODUCTION

Intervenors' rehearing petitions do not meet the criteria for panel rehearing or rehearing en banc. Intervenors neither identify any point of fact or law that the panel "overlooked or misapprehended," nor show that the panel opinion implicates any circuit "uniformity" or "question of exceptional importance." Fed. R. App. P. 40(a)(2). Intervenors merely disagree with how the panel applied settled standards to the administrative record before it. Accordingly, this Court should deny the petitions.[1]

## REASONS TO DENY THE PETITION

## I. *MARIN AUDUBON* IS NOT PERTINENT

Both Rio Grande and Texas LNG filed letters citing *Marin Audubon Society v. FAA,* Dkt. No. 23-1067 (D.C. Cir. Nov. 12, 2024), *pet for reh'g en banc pending,* which held that the Council on Environmental Quality (CEQ) lacked authority to issue regulations binding other agencies. The

---

[1] Petitioners take no position on intervenors' argument that the panel's connected action holding is now moot. No party disputes that "mooting the connected-action issue" would not relieve FERC of the obligation to "analyze [carbon capture] as an alternative via a supplemental EIS." Op. 23-24.

NEPA obligations to supplement and to consider alternatives arise from the statute itself, not CEQ regulations. *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 371 (1989); 42 U.S.C. §§ 4332(2)(C)(iii), 4332(2)(F). Moreover, FERC has adopted CEQ's regulations. 18 C.F.R. § 380.1. In doing so, FERC explained that there was "no need to address" the question of "whether [CEQ] regulations are binding on the Commission as a matter of law," because FERC was "voluntarily complying with CEQ regulations." FERC, *Regulations Implementing NEPA*, 52 Fed. Reg. 47,897, 47,898 (Dec. 17, 1987). None of CEQ's regulatory revisions are material to claims here, so it does not matter whether FERC prospectively adopted these updates.

## II. RIO GRANDE'S ARGUMENTS THAT FERC LACKED OBLIGATION OR AUTHORITY TO CONSIDER ENVIRONMENTAL JUSTICE HAVE BEEN WAIVED, AND ALTERNATIVELY DOES NOT IDENTIFY ANY ISSUE WARRANTING REHEARING

Rio Grande seeks rehearing of the panel's decision that "an entirely new and significantly expanded environmental justice analysis that reached new conclusions" required "a supplemental EIS." Op. 17. Rio Grande argues that because FERC had no obligation to consider

2

environmental justice, flaws in this analysis cannot violate NEPA or provide a basis for vacatur. RG_Pet. 13-15.

Rio Grande has waived this argument by not raising it previously. Moreover, the panel did not hold that FERC was required to consider environmental justice. It merely followed the prior holding, in *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1330 (D.C. Cir. 2021), that once FERC chose to do so, FERC could not do so arbitrarily. Rio Grande has not shown that *this* holding conflicts with precedent from this or other Circuits. Insofar as Rio Grande argues that FERC was *prohibited* from considering environmental justice, this argument is also waived and unsupported.

## A. Rio Grande's Conduct in *Vecinos*, FERC Proceedings, and This Litigation Bars Its New Environmental Justice Arguments

Rio Grande argues that Congress did not empower FERC to consider environmental justice in evaluating Natural Gas Act authorizations. RG_Pet. 15. This cannot be a basis for rehearing, because Rio Grande did not present this argument in any prior filing, and Rio Grande offers no explanation for its failure to so do.

3

In this litigation, Rio Grande argued that FERC's environmental justice analysis was reasonable, but did not argue that FERC had no authority or obligation to consider the issue. 23-1174 Intervenor Br. 14-18. "Not having [made this argument] in the first instance, [Rio Grande's] present attempt comes too late." *City of Holyoke Gas & Elec. Dep't v. FERC*, 954 F.2d 740, 745 (D.C. Cir. 1992) (citing Fed. R. App. P. 28(a)(4)) (denying petition for rehearing); *Easley v. Reuss*, 532 F.3d 592, 593-94 (7th Cir. 2008).

Previously, *Vecinos* held that FERC's reliance on an arbitrary environmental justice analysis violated both NEPA and the Natural Gas Act. 6 F.4th at 1330-31. This entailed the conclusion that FERC had authority to consider environmental justice in its Natural Gas Act decisionmaking. Rio Grande fully participated in the *Vecinos* litigation, and is precluded from challenging that holding now. *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015).

And in the FERC proceedings (both before and after *Vecinos*), Rio Grande assisted in FERC's preparation of environmental justice analysis

(*e.g.*, by providing demographic information[2]), without questioning FERC's authority to conduct or consider such an analysis. Rio Grande did not seek rehearing of FERC's decision to impose mitigation measures in response to environmental justice concerns. Op. 14; *see* [RGJA067-069, 167]. Having failed to raise such arguments in the agency proceedings, Rio Grande cannot, as an intervenor, raise them before this court. *Synovus Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991).

## B. Rio Grande Has Not Identified Any Precedent Conflicting With The Panel's Holding That FERC Could Choose to Consider Environmental Justice

Rio Grande now argues that the Executive Orders and CEQ and EPA guidance on environmental justice are not enforceable or binding on FERC. RG_Pet. 13-15, 20-21; Rio Grande 28(j) Letter. The panel did not hold that they were.

The panel correctly observed that FERC *chose* to consider environmental justice in its NEPA review, and that FERC's stated

---

[2] Accession No. 20160505-5179 (Resource Report 5, RR5 146-159), Accession No. 20220520-5124 (Response to May 2, 2022 Data Request, 2-21).

5

method for doing so was to follow Executive Order 12,898, 59 Fed. Reg. 7,629 (Feb. 11, 1994) and "CEQ and EPA guidance." Op. 10, 16. The panel noted that FERC also chose to interpret its Natural Gas Act authority to include consideration of environmental justice, and that FERC exercised this authority to order additional mitigation measures. Op. 14; *see* [RGJA067-069] (Reauthorization Order); [RGJA167] (Statement of Chairman Phillips P6, emphasizing "bipartisan" support among commissioners for this action). FERC chooses to protect environmental justice in other proceedings as well.[3]

Rio Grande asserts in passing that FERC is not "empowered" to consider environmental justice, but it identifies no case conflicting with the panel's holding that FERC could chose to do so. RG_Pet. 15. This Court has consistently held that FERC has this authority. *Vecinos*, 6 F.4th at 1330, *Sierra Club v. FERC*, 867 F.3d 1357, 1368 (D.C. Cir. 2017) ("*Sabal Trail*"). *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766 (1983), cited by RG_Pet. 13, held that NEPA encompasses effects "proximately related" to "change in the physical

---

[3] *See* https://www.ferc.gov/EJ

environment;" analysis is not limited to the physical effects themselves. 460 U.S. at 774. Evaluating air pollution's impact requires considering who will be exposed to it. Op. 16. Nothing in *Metropolitan Edison* suggests that, where an action will affect the physical environment, questions about who will suffer from those effects are beyond NEPA's scope.

## III.  THE PANEL REASONABLY FOUND THAT THE FACTS HERE TRIGGERED AN OBLIGATION TO SUPPLEMENT THE EIS

The panel held that a supplemental EIS was required for two reasons. One, which intervenors do not challenge, was to consider an alternative implementing carbon capture and sequestration for the Rio Grande project. Op. 23-24. The other was because of the new information, analysis, and conclusion regarding environmental justice impacts.

On this second ground for supplementation, intervenors drastically misstate the panel's holding. The panel did not hold that new data, or the volume thereof, *itself* required an SEIS. RG_Pet. 9; RB_Pet. 13; TX_Pet. 7. The "fundamental[]" issue was FERC's "new conclusion[]" that that, contrary to what FERC had found previously, environmental justice

communities *would* suffer disproportionately high and adverse impacts. Op. 14-15.

The panel explained that FERC itself identified "whether impacts on environmental justice communities are disproportionately high and adverse" as one of the three key components of its environmental justice analysis. Op. 10-11. It was arbitrary for FERC to center this issue and then argue that FERC's reversed assessment thereof—concluding that impacts to environmental justice communities *would be* disproportionately high and adverse, where FERC had previously concluded that they would not be—did not give rise to a "seriously different picture of the environmental landscape." Op. 15 (quoting *Stand Up for Cal.! v. Dep't of the Interior*, 994 F.3d 616, 629 (D.C. Cir. 2021)) (emphasis omitted)); [RGJA198] (Reauthorization Order, also quoting *Stand Up for Cal.!*). The fact that FERC also concluded that impacts would not otherwise be significant did not undermine the seriousness of this change. FERC purported to follow guidance issued by EPA and the Council on Environmental Quality. Op. 16-17; *see* [RGJA553-559] (initial authorization), [RGJA052] (reauthorization). That guidance explains that a disproportionate impact can exist, and be cause for concern, even

8

absent "significant impacts to the general population," [RGJA723-724],
as FERC acknowledged. [RGJA052].

The panel's holding is therefore an unremarkable application of
precedents holding that agency action can be affirmed only on the basis
articulated by the agency, and that once an agency chooses to analyze
environmental justice, the analysis cannot be arbitrary. *Healthy Gulf v.
FERC*, 107 F.4th 1033, 1040 n.2 (D.C. Cir. 2024) (citing *SEC v. Chenery
Corp.*, 332 U.S. 194, 196 (1947)), *Cmtys Against Runway Expansion, Inc.
v. FAA*, 355 F.3d 678, 689 (D.C. Cir. 2004).

Whether new information paints a "seriously different picture" is a
fact-specific determination. And the cases Intervenors cite are easily
factually distinguished. *See* RG_Pet. 9-11, TX_Pet. 8-9. *None* involved an
agency that had reached a new *conclusion* about environmental
impacts—much less a new conclusion about an issue that the agency
itself had identified as central. Beyond this "fundamental[]" distinction,
Op. 14, the panel also noted other factual distinctions. *E.g.,* Op. 15
(explaining that unlike in *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360,
374 (1989), FERC "trusted" and "used" the new information).

The uniqueness of the facts here also rebuts intervenors' suggestion that the panel's decision will have wide-ranging and unworkable consequences. RB_Pet. 12-13. While agencies routinely analyze new information after a final EIS has been issued, such analysis rarely leads to agencies reversing their conclusions as FERC did here; intervenors provide no examples of such reversal. And ascribing weight to the agency's changed conclusion still preserves the agency's leading role: it is still the agency that decides in the first instance whether a new conclusion is warranted. The panel's decision merely requires the agency to abide by the consequences of that decision.

## IV.  HARMLESS ERROR

Intervenors also challenge the panel's harmless error analysis, but here again, they simply disagree with the panel's application of a well-accepted test

The panel's analysis does not conflict with the two cases intervenors cite. One, cited only in passing (RG_Pet. 12), did not find that the agency had erred, and therefore did not address—much less decide—any

questions of harmless error. *Stand Up for California!*, 994 F.3d at 629-30.

The other case, *Friends of the River v. FERC*, 720 F.2d 93 (D.C. Cir. 1983), held that FERC's failure to issue a supplemental EIS was harmless because FERC had adequately fulfilled one of NEPA's purposes, by informing the public. 720 F.2d at 106-07. *Friends of the River* concluded that because this purpose had already been served, a remand would be "pointless." *Id.* at 108. But NEPA serves other purposes as well. As the Supreme Court explained six years after *Friends of the River*, a "perhaps more significant[]" purpose is to "provide[] a springboard for public comment," so that the public may "play a role in … the decisionmaking process." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). *Friends of the River* did not consider an argument that if FERC had provided for public comment on FERC's belated analysis, that those comments could have influenced FERC's decision. Cases do not establish precedent on merits arguments they did not consider. *See Vecinos*, 6 F.4th at 1329.

Here, in contrast with *Friends of the River*, the panel recognized that comments can influence agency decisionmaking. Op. 18-21. The

11

panel further explained how FERC's failure to follow NEPA procedures had meaningfully impaired Petitioners' and the public's ability to effectively comment. *Id*. Because the panel considered an issue that *Friends of the River* did not, and built a factual record that distinguishes *Friends of the River*'s conclusion that remand would be pointless, there is no conflict between the cases warranting en banc review.

## V.  AIR QUALITY DATA

Texas LNG argues that FERC properly declined to consider air quality data from the Isla Blanca monitor because this data had not been validated by EPA.[4] TX_Pet. 16-17. The panel held that FERC had not made this argument, so this argument could not support FERC's decision. Op. 27. Texas LNG has not identified any decision purportedly conflicting with this holding.

---

[4] EPA has since confirmed that this data *was* valid. https://www.epa.gov/system/files/documents/2024-08/pm25_designvalues_2021_2023_final_08_08_24_0.xlsx

## VI.  REMEDY

Vacatur is the presumptive remedy for arbitrary agency action. Op. 33. Under *Allied-Signal v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993), the Court considers two factors in deciding whether to depart from this presumption. The panel reasonably applied, rather than departed from, *Allied-Signal*. The cases intervenors identify are factually distinct.

### A.  Whether FERC Could Justify Its Action

The first factor turns on "the extent of doubt whether the agency chose correctly." Op. 33 (quoting *Allied-Signal*, 988 F.2d at 150).

D.C. Circuit precedent holds that where the agency has skipped a procedural step that invites the public to participate in decisionmaking, "the first factor asks 'not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step.'" Op. 33 (quoting *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021)); *accord Sugar Cane Growers Co-op v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002). Where it is uncertain "whether the Petitioners' comments would have influenced the Agency's decision had they been

13

given the opportunity to comment," the Court does not have a basis for

concluding that the agency would be able to rehabilitate its decision on

remand. *Am. Pub. Gas Ass'n v. Dep't of Energy*, 72 F.4th 1324, 1339

(D.C. Cir. 2023) (quotation omitted). This is why "[t]he Court typically

vacates rules when an agency entirely fails to provide notice and

comment." *Id.* at 1343.

Intervenors have not identified any way in which the panel's

decision departs from or expands upon *Standing Rock*, which this Court

already declined to review en banc. Case 20-5197, Doc. 1895703 (Apr. 23,

2021).

Nor have intervenors identified any conflict with other D.C. Circuit

cases. *Food and Water Watch v. FERC*, 28 F.4th 277 (D.C. Cir. 2022),

cited at RG_Pet. 16, TX_Pet. 23, <u>followed</u> *Standing Rock*, but found that

that there, FERC <u>could</u> potentially "justify its decision to skip [the]

procedural step" at issue. *Id.* at 292. *Accord Sugar Cane Growers*, 289

F.3d at 98 (remanding without vacatur after finding it was "at least

possible" the agency could justify omitting notice and comment). *Healthy*

*Gulf*, 107 F.4th 1033, and *City of Oberlin v. FERC*, 937 F.3d 599 (D.C.

14

Cir. 2019) did not hold that FERC had skipped a procedural step, and therefore have no bearing on this question.

Rio Grande also drastically overstates the impact of the panel's opinion, and of *Standing Rock*. Neither held that the first *Allied-Signal* factor will support vacatur for "nearly *every* NEPA violation." RG_Pet. 17; *see* TX_Pet. 3. Almost all NEPA violations concern the *content* of an EIS, rather than an omitted procedural step. Even when an agency *has* skipped a step, focusing on that procedural choice does not establish "a near-automatic vacatur rule for even trivial NEPA errors," RG_Pet. 17-18, as *Food and Water Watch* and *Sugar Cane Growers* demonstrate.

The out-of-circuit cases intervenors cite also do not demonstrate a conflict. Most have no bearing on the issue, because they do not involve agencies found to have skipped a procedural step.[5]

---

[5] These are *W. Watersheds Project v. Haaland*, 69 F.4th 689, 722-23 (10th Cir. 2023), *Sierra Club v. EPA*, 60 F.4th 1008, 1022-23 (6th Cir. 2023), *Nat. Res. Def. Council v. EPA*, 808 F.3d 556, 584 (2d Cir. 2015), *Black Warrior Riverkeeper v. Army Corps of Eng'rs*, 781 F.3d 1271, 1291 (11th Cir. 2015), *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001).

Of the two cases actually considering this fact pattern, Rio Grande emphasizes *Center for Food Safety v. Regan*, 56 F.4th 648 (9th Cir. 2022). RG_Pet. 18-19. Although *Center for Food Safety* declined to follow *Standing Rock*, the case is factually distinct. There, EPA had skipped notice and comment, and would need to provide this process on remand. *Id.* at 660. But that case's extensive procedural history provided details of the petitioners' concerns. After noting that "Petitioners' objections to [the rule] have not changed," *id.* at 655*, Center for Food Safety* was able to provide over 2000 words discussing why raising those particular objections on remand would not cast doubt on the EPA rule. *Id.* at 663-67.

Here, the panel could not confidently dismiss future comments' impacts. On carbon capture—the more "substantial task" for review, Op. 34—neither the public nor FERC have yet weighed in on an analysis that will be inherently project-specific. *See Venture Global CP2 LNG*, 187 FERC ¶ 61,199, P9 (Jun. 27, 2024) (approving project using carbon capture),[6] *Healthy Gulf*, 107 F.4th at 1046-47 (affirming FERC's rejection

---

[6] *Accord Cameron LNG*, Notice to Proceed with Carbon Capture Sequestration Modification, Accession No. 20241205-3015.

16

of carbon capture despite neighboring CP2 project's use thereof). On air

pollution and environmental justice, the panel identified issues

Petitioners have not yet been able to raise due to FERC's inadequate

procedures. Op. 19.[7] Because here—unlike *Center for Food Safety*—the

panel could not predict what comments will say on remand, the panel

necessarily harbored "substantial doubt" regarding whether these

comments would compel FERC to modify its "substantive action."

*Standing Rock*, 985 F.3d at 1053 (citing *Oglala Sioux Tribe v. U.S.*

*Nuclear Regulatory Commission*, 896 F.3d 520, 538 (D.C. Cir. 2018)).

The final case intervenors cite, *Texas Association of Manufacturers*

*v. Consumer Products Safety Commission*, 989 F.3d 368 (5th Cir. 2021),

does not establish an inter-circuit conflict warranting en banc review.

Although the Fifth Circuit held that the agency had failed to provide

required notice and comment, *id.* at 383, the court only tersely addressed

remedy, *id.* at 389-90. The case did not discuss the issue identified here

and in *Standing Rock*: that the missing procedures could have revealed

---

[7] *See also* [RGJA173] (dissenting Commissioner Clements noting
that that the new environmental justice finding might have motivated
other persons to comment, if given the opportunity to do so).

issues casting doubt on the agency's ability to rehabilitate its substantive decision on remand. *Id.*

## B. Disruptive Consequences

Evaluating the disruption that would result in an individual case is a fact-specific question that does not warrant rehearing en banc. The decision here is not an outlier. This Court has vacated authorizations for gas infrastructure that had already been built and entered use. *Env't Def. Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021); *Sabal Trail*, 867 F.3d at 1379. These projects have not completed—or even started—construction, and no third parties depend upon their imminent operation.

The only purported conflict with prior cases intervenors identify concerns the panel's statement (in a parenthetical quote) that disruptive consequences are "weighty only insofar as the agency may be able to rehabilitate its rationale." Op. 34. The panel did not "write the disruption factor out of the analysis." RB_Pet. 5. The panel evaluated disruption and found it to be "significant," but tempered by the possibility of an "expeditious" remand, and not enough to "outweigh" the first *Allied-Signal* factor. Op. 34. There is no conflict between the panel's fact-specific decision and a case holding, on different facts, that while the first *Allied-*

18

*Signal* factor supported vacatur, exceptional disruption outweighed it. *North Carolina v. EPA*, 550 F.3d 1176, 1177-78 (D.C. Cir. 2008).

The panel's conclusion that disruptive consequences are less "weighty," Op. 34, because of doubts about FERC's substantive decision comports with *Environmental Defense Fund* and with *Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009), the source of this language. *Comcast* explained that when an agency cannot rehabilitate its decision, the decision will change on remand—with or without vacatur. *Id.* If all vacatur does is cause this change to occur earlier, vacatur has not caused a disruptive "interim" state of affairs. *Id.* at 8-9 (quoting *Allied-Signal*, 988 F.2d at 150-51). Observing that a factor weighs less is not equivalent to refusing to weigh it. Intervenors have not identified any case conflicting with this panel's adherence to precedent holding that the strength of the first *Allied-Signal* factor influences the strength of the second.

Finally, the fact that FERC anticipates issuing a remand order in November 2025 is not a basis for rehearing. RB_Pet. 9. FERC has not explained why it has set a slower schedule here than in prior cases. *See Florida Southeast Connection*, 162 FERC ¶ 61,233, PP10, 12, 14 (Mar.

19

14, 2018) (reauthorizing a project seven months after panel opinion). Even on this schedule, there is no evidence of imminent harm akin to the gas shortages "for most of the New England and Canadian winter heating season" identified in *Town of Weymouth v. Mass. Dep't of Envtl. Prot.*, 973 F.3d 143 (1st Cir. 2020) (per curiam).[8]

## VII. VACATUR DID NOT REINSTATE FERC'S 2019 AUTHORIZATION

When the panel vacated FERC's authorization, expressly noting that "the agency 'has yet again come up with insufficient support' for [the] action" that was held unlawful in *Vecinos*, Op. 34, the panel vacated the entire authorization. If there is any ambiguity in this regard, Petitioners agree that panel rehearing would be appropriate to clarify this point.

In prior cases ordering vacatur after previously remanding without it, this Court has vacated both the action taken on remand *and* initially-

_____

[8] Intervenors' more general complaints about the time FERC takes to complete its review ring hollow where FERC's pace reflects, at least in part, Rio Grande's decision to redesign its project, and Rio Grande's subsequent failure to provide FERC with information about that redesign. Op. 9.

remanded decision. *Am. Pub. Gas Ass'n*, 72 F.4th at 1330 ("we … vacate the [2020] Final Rule and [2022] Supplement"), *Comcast*, 579 F.3d at 10. These cases presented the same facts Rio Grande points to here in arguing that FERC's 2019 authorization has not been vacated. RG_Pet. 22. The *American Public Gas Association* petition for review only named the order the agency had issued after remand, and the applicable statute of limitations was 60 days. Petition for Review, Case 22-1107, Doc. 1950741 (June 14, 2022), 42 U.S.C. § 6306(b)(1). *Comcast* appears to have involved parallel circumstances. 28 U.S.C. §§ 2342(1), 2344; 47 U.S.C. § 402(a). Rio Grande had not identified any case holding that a court in this situation lacked the power to vacate the previously-remanded agency action.

Even if this panel did not have authority to vacate the 2019 Authorizations, as Rio Grande contends, the Court could effect an equitable result under 15 U.S.C. § 717r(b). The Court could to "set aside" the 2023 reauthorization order "in part," *id.*, preserving it only to the extent that it supplants the 2019 authorization. Alternatively, rather than vacating the 2023 reauthorization, the Court could "modify" it, *id.*,

to prohibit construction until FERC completes the required SEIS and

reevaluation of the project.

## CONCLUSION

For the reasons stated above, the petition for rehearing or

rehearing en banc should be denied.


Dated: December 9, 2024


Respectfully submitted,


*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Rebecca McCreary
Staff Attorney
1650 38th Street, Suite 103W
Boulder, CO 80301
(303) 449-5595 ext. 103
rebecca.mccreary@sierraclub.org

*Attorneys for Carrizo Comecrudo*
*Tribe of Texas, Sierra Club, and*

*Vecinos para el Bienestar de la
Comunidad Costera*

*/s/ Gilberto Hinojosa*
Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 554-4218
ghinojosa@ghinojosalaw.net
Attorney for City of Port Isabel

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of the Court's October 23, 2024 Order and Fed. R. App. P. 40(d)(3)(A) and D.C. Circuit Rule 35(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,886 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word for Windows Office 365 in 14-point Century Schoolbook.

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org
*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, I have

served the foregoing Joint Response to Petitions for Rehearing or

Rehearing En Banc, including the Addendum thereto, on all

registered counsel through the Court's electronic filing system

(ECF).

> */s/ Nathan Matthews*
> Nathan Matthews
> Sierra Club
> 2101 Webster St., Suite 1300
> Oakland, CA 94612
> 415-977-5695
> nathan.matthews@sierraclub.org
>
> *Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*