# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Filed March 18, 2025

No. 23-1174

CITY OF PORT ISABEL, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

RIO BRAVO PIPELINE COMPANY, LLC AND RIO GRANDE LNG, LLC,
INTERVENORS

Consolidated with 23-1221

On Petitions for Panel Rehearing

No. 23-1175

CITY OF PORT ISABEL AND SIERRA CLUB,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TEXAS LNG BROWNSVILLE, LLC,
INTERVENOR

Consolidated with 23-1222

On Petitions for Panel Rehearing

Before: SRINIVASAN, *Chief Judge*, CHILDS and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*: In these cases, the court considered petitions for review challenging the Federal Energy Regulatory Commission's reauthorization of two liquefied natural gas terminals and an associated pipeline in Texas. *See City of Port Isabel v. FERC*, 111 F.4th 1198, 1203 (D.C. Cir.

3

2024). In an opinion issued on August 6, 2024, we held that the Commission had erred in four ways. Specifically, the Commission failed to issue supplemental environmental impact statements addressing its updated environmental justice analysis, failed to treat a proposed carbon capture and sequestration (CCS) system as a connected action, failed to treat that system as a reasonable alternative, and failed to adequately explain why it had declined to consider air quality data from a nearby monitor. We further held that the Commission's decision to skip the first three procedures could not be justified, and therefore required the Commission to perform those procedures on remand. Based on those procedural defects, the court vacated the reauthorization orders.

On October 21, 2024, the project applicants, as respondent-intervenors, filed petitions for panel rehearing disputing portions of the panel opinion's merits analysis and arguing that, at the least, any errors in the Commission's orders did not warrant vacatur. We directed the Commission and petitioners to file responses.

Having considered the parties' positions, the court partially grants the petitions for rehearing to the extent that we will remand without vacatur for the Commission to conduct further proceedings. *See, e.g.*, *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (per curiam) (amending opinion on rehearing in similar fashion); *see also United States Sugar Corp. v. EPA*, 844 F.3d 268, 270 (D.C. Cir. 2016) (per curiam); *Nat'l Parks Conservation Ass'n v. Semonite*, 925 F.3d 500, 502 (D.C. Cir. 2019) (per curiam). The parties also dispute the impact of certain legal developments since the panel opinion issued; as explained further below, we decline to address those developments in the first instance, though we

4

acknowledge that they may alter the procedures the Commission must conduct on remand.[*]

In deciding whether to vacate agency action, this court balances two factors: (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)," and (2) "the disruptive consequences" of vacatur. *Allied-Signal v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) (quoting *Int'l Union, UMW v. FMSHA*, 920 F.2d 960, 967 (D.C. Cir. 1990)). In most cases, the first factor asks whether the agency could "correct [the] deficiencies" identified and reach the same ultimate decision. *Oglala Sioux Tribe v. Nuclear Regul. Comm'n*, 896 F.3d 520, 538 (D.C. Cir. 2018). In *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 985 F.3d 1032 (D.C. Cir. 2021), however, we held that, "[w]hen an agency bypasses a fundamental procedural step," we assess the seriousness of an order's deficiencies by asking "not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step." *Id.* at 1052.

*Standing Rock*'s framing of the first *Allied-Signal* factor ensures that agencies do not have an incentive to "build first and conduct comprehensive reviews later." *Id.* Under a

---

[*] Rio Grande LNG, LLC also informs us that, after the panel opinion issued, it withdrew its proposal for a CCS system. Rio Grande and Rio Bravo Pipeline Company, LLC now ask us to vacate the connected action portion of the panel opinion as moot. The original opinion acknowledged Rio Grande's right not to proceed with its CCS proposal, but Rio Grande's unilateral choice to withdraw the proposal does not warrant vacating the panel's holding on the subject. To the contrary, it is well established that a party may not collaterally attack an opinion that we have already issued by unilaterally mooting the controversy. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).

5

contrary rule, "[i]f an agency were reasonably confident that its [environmental impact statement] would ultimately counsel in favor of approval, there would be little reason to bear the economic consequences of additional delay" by preparing the statement before approving a project. *Id.* *Standing Rock* thus teaches that the first *Allied-Signal* factor weighs in favor of vacatur when there is no way for an agency to rehabilitate its decision to skip a procedural step, even if the additional procedure is unlikely to change the agency's bottom line.

Here, the panel applied *Standing Rock*'s reasoning to the first *Allied-Signal* factor; rather than ask "only" whether the Commission could likely reapprove the projects, the panel asked whether the Commission could justify its decision to omit the procedures it had skipped. *Id.* We said no, concluding that on these specific facts, the Commission was required "to issue a supplemental [environmental impact statement]" and to consider the "CCS proposal . . . as either a connected action or a project alternative." *Port Isabel*, 111 F.4th at 1218. We then vacated the reauthorization orders because we found that the "significant disruption vacatur may cause the projects" did not "outweigh the seriousness of the Commission's procedural defects." *Id.*

That analysis appropriately relied on *Standing Rock* to the extent it determined that the first *Allied-Signal* factor favored vacatur because the Commission could not justify on remand its choice to omit the procedures at issue. But it failed to acknowledge that not all procedural omissions point toward vacatur with the same force. Importantly, *Standing Rock* concerned a truly "fundamental" procedural error: an agency's decision to authorize the construction of a pipeline without issuing any environmental impact statement whatsoever. 985 F.3d at 1052. We likened the error to that of "an agency that bypassed required notice and comment rulemaking" altogether, reasoning that completing a required environmental impact

6

statement went to the core of the agency's responsibilities under the National Environmental Policy Act (NEPA).  *Id.*

The procedural steps the Commission skipped here were important, but they were not "fundamental" in the same sense.  *Id.*  The Commission has already issued extensive final environmental impact statements reflecting more than three years of review and public comment.  *See* No. 23-1174 J.A. 247–50; No. 23-1175 J.A. 201–03.  Any further proceedings the Commission would need to undertake pertain to specific, discrete subjects; we are not confronted with a total and unjustifiable failure to follow NEPA's core procedures as to an entire project, as we were in *Standing Rock*.  Given all that the Commission and the project applicants have done, we need not be concerned that remand without vacatur in these circumstances will create to the same degree an incentive to "build first and conduct comprehensive reviews later."  *Standing Rock*, 985 F.3d at 1052.

In sum, for the reasons *Standing Rock* gave, it is important to the remedial analysis that the Commission's procedural choices were not merely inadequately explained, but unjustifiable.  Even so, we must account for the reality that the procedures the Commission "bypasse[d]" were not quite "fundamental."  *Id.*  Properly considered, then, the first *Allied-Signal* factor favors vacatur here, but not with nearly the force that it did in *Standing Rock* or that our opinion ascribed to it.

Against that backdrop, the seriousness of the reauthorization orders' deficiencies does not outweigh the disruptive effects of vacatur.  This court never doubted that vacatur would impose significant disruptive consequences, *see Port Isabel*, 111 F.4th at 1218, and respondent-intervenors have provided more details about those consequences in their rehearing petitions, *cf. Nat. Res. Def. Council v. EPA*, 464 F.3d 1, 3 (D.C. Cir. 2006) (accounting for new information raised in

7

rehearing petition). These complex, large-scale projects have been in development for over eight years. Vacatur would upend the schedule for their construction, undermine respondent-intervenors' ability to meet binding contractual commitments made in reliance on the Commission's orders, stall respondent-intervenors' efforts to secure debt financing and finalize labor contracts, and potentially prevent them from supporting thousands of jobs in the local community. Unnecessary delays in putting these projects into service could have industry-wide effects; just one of the terminals is projected to supply liquefied natural gas equal to approximately 6% of current global demand when completed. The Commission's procedural missteps, though important, are not so fundamental as to justify throwing the projects and those reliant upon them into disarray.

In submissions since the petitions for rehearing were filed, the Commission and respondent-intervenors have offered another reason why we might amend the panel opinion or remand without vacatur: Two recent Executive Orders have potentially altered the relevant legal landscape. When these cases were briefed, argued, and decided, all parties took as given that the Commission adhered to Executive Order 12,898, 59 Fed. Reg. 7629 (Feb. 16, 1994), which required federal agencies to identify and mitigate any disproportionate impacts their activities may have on minority and low-income populations. *See, e.g.*, Order on Remand and Amending Section 7 Certificate, *Rio Grande LNG, LLC & Rio Bravo Pipeline Co.*, 183 FERC ¶ 61,046, at P 103 (Apr. 21, 2023). On January 21, 2025, President Trump revoked that Executive Order. *See* Exec. Order No. 14,173 § 3(a)(i), 90 Fed. Reg. 8633, 8634 (Jan. 21, 2025). A second Executive Order announced, among other things, that agencies may no longer weigh any environmental considerations except those expressly provided by statute. *See* Exec. Order No. 14,154 § 6, 90 Fed Reg. 8353, 8356 (Jan. 20, 2025). Respondent-

8

intervenors and the Commission argue, to varying degrees, that these Executive Orders undermine the panel's analysis of the merits of these cases. *See* Rio Grande's Fed. R. App. P. 28(j) Letter at 1 (Jan. 23, 2025); Texas LNG Brownsville LLC's Fed. R. App. P. 28(j) Letter at 1–2 (Jan. 24, 2025); Commission's Response to Fed. R. App. P. 28(j) Letters at 1–2 (Feb. 6, 2025). Petitioners, for their part, disagree. *See* Petitioners' Response to Fed. R. App. P. 28(j) Letters at 1–2 (Feb. 3, 2025).

We decline to resolve these multi-faceted disputes over the impact of the intervening Executive Orders in the first instance. Doing so would not affect the court's conclusion on rehearing that vacatur is not warranted in these cases. Nor do these legal developments alter the panel's conclusion that, based on the law and facts at the time of the Commission's orders, and the arguments timely presented to this court, the Commission's reasons for skipping the procedures at issue were arbitrary and capricious and that the Commission would have been required to conduct those procedures before deciding whether to reauthorize the projects. *Cf. Ctr. for Biological Diversity v. FERC*, 67 F.4th 1176, 1181 n.2 (D.C. Cir. 2023) (applying law in effect at the time the Commission acted).

These developments may, however, be highly relevant to the Commission's proceedings on remand. As respondent-intervenors and the Commission suggest, the Executive Orders give rise to new legal arguments that could justify a choice by the Commission not to perform some or all of the procedural steps that we held were required. Neither the initial panel opinion nor this one prevents the Commission from attempting to rehabilitate its chosen course on remand by drawing on legal developments that were not before this court when the panel's initial decision issued. We leave it to the Commission to have the "first word" on the Executive Orders' implications for these proceedings. *Nat'l Fuel Gas Supply Corp. v. FERC*, 899 F.2d 1244, 1249–50 (D.C. Cir. 1990) (per curiam) (noting "the

9

general principle that an agency should be afforded the first word on how an intervening change in law affects an agency decision pending review").

Accordingly, we remand these cases to the Commission without vacating its orders.

*So ordered.*